Sharon ANDERSON and George
Anderson, Plaintiffs,

v.

DUNBAR ARMORED, INC.; Harry A. Kocopi, Individually and as the Director of Employee Relations for Dunbar Armored, Inc.; Ashley R. Mew, Individually and as the Branch Manager for Dunbar Armored, Inc.; and Horace Johnson, Individually and as the General Manager of Dunbar Armored, Inc., Defendants.

Civil Action File No. 1:08–
CV–3639–BBM.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 18, 2009.

Lisa R. Reeves, Lisa R. Roberts & Associates, Newnan, GA, for Plaintiffs.

Paul Monnin, DLA Piper LLP, Atlanta, GA, Amy Beth Leasure, DLA Piper LLP, Tampa, FL, Richard J. Hafets, DLA Piper Rudnick Gray Cary, Baltimore, MD, for Defendants.

### ORDER

BEVERLY B. MARTIN, District Judge.

This case is before the court on the Final Report and Recommendation of the Magistrate Judge (the "R & R") [Doc. No. 42]. In the R & R, the Magistrate Judge recommends that the court grant Defendants Dunbar Armored, Inc. ("Dunbar"), Harry A. Kocopi ("Mr. Kocopi"), and Horace Johnson's ("Mr. Johnson") (collectively "Defendants") converted Motion for Summary Judgment [Doc. No. 24]; and like-wise grant Dunbar's converted Motion for Summary Judgment [Doc. No. 5], Mr. Johnson's converted Motion for Summary Judgment [Doc. No. 12], and Mr. Kocopi's converted Motion for Summary Judgment [Doc. No. 14]. Finally, the Magistrate Judge recommends that the court grant the Defendants' Motion to Strike the Second Amended Complaint [Doc. No. 37]; and recommends *sua sponte*, that Plaintiffs Sharon Anderson and George Anderson's (collectively "the Andersons") claims against Ashley R. Mew "(Mr. Mew") be dismissed without prejudice due to the Andersons' failure to serve Mr. Mew pursuant to Rule 4(m).

None of the parties has filed Objections to the R & R. Where no objections to the R & R have been stated, the court reviews the R & R for clear error. *Tauber v. Barnhart*, 438 F.Supp.2d 1366, 1373–74 (N.D.Ga.2006) (Story, J.) (citing *HGI Assocs., Inc. v. Wetmore Printing Co.*, 427 F.3d 867, 873 (11th Cir.2005)); *Chamblee v. Schweiker*, 518 F.Supp. 519, 520 (N.D.Ga.1981) (O'Kelley, J.). Clear error review asks if, "after viewing all the evidence, we are 'left with the definite and firm conviction that a mistake has been committed.'" *HGI Assocs.*, 427 F.3d at 873 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

After having conducted a thorough review of the R & R, the court finds no clear error by the Magistrate Judge. *See id.* The court thus adopts the R & R in its entirety, and grants the Defendants' converted Motions for Summary Judgment in full.[1]

---

1. The court chooses to exercise its supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

### *Summary*

■ For the foregoing reasons, the court ADOPTS the Final Report and Recommendation of the Magistrate Judge [Doc. No. 42]. The Defendants' converted Motion for Summary Judgment [Doc. No. 24] is GRANTED; Dunbar's converted Motion for Summary Judgment [Doc. No. 5] is GRANTED; Mr. Johnson's converted Motion for Summary Judgment [Doc. No. 12] is GRANTED; and Mr. Kocopi's converted Motion for Summary Judgment [Doc. No. 14] is likewise GRANTED. The court also GRANTS the Defendants' Motion to Strike the Second Amended Complaint [Doc. No. 37], and finally, DISMISSES WITHOUT PREJUDICE all claims against Mr. Mew due to the Andersons' failure to serve him pursuant to Rule 4(m).[2] This case is hereby DISMISSED.

## ORDER FOR SERVICE OF REPORT AND RECOMMENDATION

ALAN J. BAVERMAN, United States Magistrate Judge.

Attached is the Report and Recommendation of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1), FED. R. CIV. P. 72(b), and N.D. Ga. R. 72.1(D)(2). Let the same be filed and a copy, with a copy of this order, be served upon counsel for the parties or, if a party is not represented, upon that party directly.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Report and Recommendation within ten (10) days of receipt of this Order. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to any transcripts if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review. *United States v. Slay*, 714 F.2d 1093 (11th Cir.1983).

The Clerk is directed to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED and DIRECTED,** this *24th* day of *July*, 2009.

## UNITED STATES MAGISTRATE JUDGE'S ORDER AND FINAL REPORT AND RECOMMENDATION

Currently before the Court are Defendants Dunbar Armored, Inc's ("Dunbar Armored"), Harry Kocopi's ("Kocopi") and Horace Johnson's ("Johnson") (collectively "Defendants") converted motions for summary judgment. [Docs. 5, 12, 14 and 24]. For the reasons set forth herein, the undersigned **RECOMMENDS** that Defendants' converted motion for summary judgment, [Doc. 24], be **GRANTED**, and that Defendants Dunbar Armored, Kocopi, and Johnson's converted motions for summary judgment, [Docs. 5, 12, and 14], which rely on the arguments made in Dunbar Armored's motion, also be **GRANTED**. The Court further **RECOMMENDS**

---

**2.** The Plaintiffs have received notice regarding their obligation to file timely objections to the R & R setting forth "appropriate evidence and arguments why their failure to serve Defendant Mew should not result in the dismissal of their claims against him." (R & R 16.) Having chosen not to file any objections, the court finds that they have not demonstrated "good cause" for their failure to effectuate service on Mr. Mew. *See* Fed.R.Civ.P. 4(m). Due to the court's grant of summary judgment on all claims against all other defendants, the court declines to give the Plaintiffs additional time in which to serve Mr. Mew.

that Defendants' motion to strike Plaintiffs' Second Amended Complaint, [Doc. 37], be **GRANTED**. Also, the Court **RECOMMENDS, *SUA SPONTE*,** that Plaintiffs' claims against Defendant Mew be **DISMISSED WITHOUT PREJUDICE** for Plaintiffs' failure to serve him pursuant to FED. R. CIV. P. 4(m). The Court **GRANTS** Defendants' motion to stay discovery and defer issuance of the scheduling order, [Doc. 33]. Plaintiff's construed Rule 56(f) motion, [Doc. 36], is **DENIED**.

## *INTRODUCTION*

Plaintiffs filed a complaint on November 26, 2008, against Defendants alleging pregnancy discrimination and gender discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), harassment in violation of the Civil Rights act of 1991, 42 U.S.C. § 1981, *et seq.*, ("§ 1981"), and negligent retention and hiring, intentional infliction of emotional distress, vicarious/imputed liability, loss of consortium, and punitive damages under Georgia law. [Doc. 1]. In lieu of answering, Defendants filed motions to dismiss and submitted documents in support of their motions. [*See* Docs. 5, 12, and 14]. Plaintiffs responded to these motions and also submitted various documents in support of their responses. [Docs. 18 and 22].

On March 9, 2009, Plaintiffs filed an amended complaint against all Defendants alleging discrimination based on race and gender in violation of Title VII and 1981, violation of the Equal Protection Clause of the Fourteenth Amendment, conspiracy in violation of 18 U.S.C. § 241, deprivation under color of law in violation of 18 U.S.C. § 242, and intentional infliction of emotional distress, negligent infliction of emotional distress, loss of consortium, and punitive damages under Georgia law, harassment in violation of 1981, retaliation in violation of Title VII and 1981, and vicarious/ imputed

liability, and negligent retention and hiring under Georgia law by Dunbar Armored. [Doc. 15 ("Amended Complaint") ].

Defendants again responded by filing a motion to dismiss with documents in support of their motion. [Doc. 24]. Plaintiffs timely responded and relied on their documents previously submitted. [Docs. 18, 22 and 25]. Defendants timely filed a reply brief. [Doc. 26].

On June 2, 2009, the undersigned converted Defendants' various motions to dismiss into motions for summary judgment, and gave Plaintiffs until June 23, 2009, to respond to the converted motions for summary judgment. [Doc. 27]. Thereafter, Defendants filed a motion to stay discovery and issuance of the scheduling order, to which Plaintiffs timely responded. [Docs. 33 and 38]. On June 22, 2009, Plaintiffs filed a second amended complaint and a response to Defendants' construed motions for summary judgment. [Docs. 35 and 36, respectively]. Defendants then filed a motion to strike Plaintiffs' second amended complaint and a reply to Plaintiffs' response to the construed motions for summary judgment. [Doc. 37 and 39, respectively]. Plaintiffs timely responded to Defendants' motion to strike. [Doc. 40]. With briefing concluded, the Court now considers Defendants' converted motions for summary judgment, motion to strike, and motion to stay discovery and defer issuance of the scheduling order, and Plaintiffs' construed Rule 56(f) motion.

## I. *Preliminary Matters*

### A. *Defendant's Motion to Stay Discovery and Defer Issuance of Scheduling Order, [Doc. 33]*

Defendants argue that discovery should be stayed and the issuance of the scheduling order deferred until the Court rules on the converted motions for summary judgment. [Doc. 33 at 1]. Defendants also

argue that the Court's ruling on the dispositive motions is likely to eliminate the need for any discovery, or reduce the number of claims and parties, which would affect the amount of discovery needed, and therefore, to reduce the expense on the parties, discovery should be delayed pending the Court's ruling. [*Id.* at 2]. Defendants also argue that the issuance of the scheduling order should be delayed to avoid unnecessary time and expense caused by the issuance of the scheduling order. [*Id.* at 3].

Plaintiffs respond that discovery should not be stayed and the scheduling order deferred because discovery is an "integral part of an employment discrimination claim" and Defendants have not show good cause. [Doc. 38 at 3]. Plaintiffs also argue that a scheduling order is necessary "as the preservation of evidence is of the upmost importance due to the fact that a corporate entity and electronic evidence is involved in this matter." [*Id.*]. Plaintiffs further argue that the Court can tailor a scheduling order to accommodate the present converted motions for summary judgment. [*Id.*].

The Federal Rules of Civil Procedure grant the Court discretion to alter the normal discovery schedule "for the convenience of parties' and witnesses' and in the interests of justice." *White v. Georgia,* No. 1:07–cv–1739–WSD, 2007 WL 3170105, *1 (N.D.Ga. Oct. 25, 2007) (citing Fed. R. Civ. P. 26(d)). Additionally, this Court's Local Rules grant the Court similar discretion. *See* N.D. Ga. R. 26.2(B) ("The court may, in its discretion, shorten or lengthen the time for discovery"); *see also Clinton v. Jones,* 520 U.S. 681, 706, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.").

In this case, Defendants have challenged the sufficiency of all the claims raised against them in Plaintiffs' complaint and first amended complaint. As discussed in detail below, Plaintiffs have not specified what discovery they seek to better reply to Defendants' converted summary judgment motions. Also, the resolution of the pending converted motions for summary judgment alleviates the need for discovery in this case. Therefore, the Court agrees that a stay of discovery and deferring the issuance of the scheduling order is appropriate in this case.

Accordingly, Defendants' Motion to Stay and Defer Issuance of Scheduling Order, [Doc. 33], is **GRANTED** pending the District Court's ruling on Defendants' converted motions for summary judgment.

### B. Defendant's Motion to Strike Second Amended Complaint, [Doc. 37]

Defendants argue that Plaintiffs' second amended complaint should be stricken because Plaintiffs failed to comply with Fed. R. Civ. P. 15(a) in that they did not obtain the Defendants' written consent or seek leave of the court to amend their complaint for a second time. [Doc. 37 at 3].

Plaintiffs respond that after reviewing the Court's June 2, 2009, Order, they concluded that the "most prudent course of action would be to file a Second Amended Complaint...." [Doc. 40 at 3]. Plaintiffs also argue that they interpreted that Court's June 2, 2009, Order as allowing them leave to file a second amended complaint. [*Id.*]. Additionally, Plaintiffs argue that they have opposed Defendants' converted motions for summary judgment throughout this litigation and have acted to "satisfy the Court's directive." [*Id.*]. Finally, Plaintiffs argue that if the Court determines that the attachments to Plaintiff's Second Amended Complaint are inappropriate, that the Court allow Plaintiff to incorporate all facts, claims, and exhibits in their second amended complaint into their brief in opposition to Defendants' convert-

ed motion for summary judgment. [*Id.* at 3–4].

Defendants reply that Plaintiffs have made no effort to comply with the procedures for seeking leave to leave to file a second amended complaint. [Doc. 41 at 1]. Defendants further reply that the Court's June 2, 2009, order did not grant Plaintiffs leave to file a second amended complaint. [*Id.* at 2–3]. Finally, Defendants reply that allowing Plaintiffs to file a second amended complaint would be frivolous because Plaintiffs' second amended complaint is substantially similar to their first amended complaint and would cause unnecessary waste of the parties' time, effort, and money if the Defendants were required to move to dismiss Plaintiffs' claims again. [*Id.* at 4–5].

Federal Rule of Civil Procedure 15 provides, in pertinent part, as follows:

(a) **Amendments Before Trial.**

*(1) Amending as a Matter of Course.* A party may amend its pleading once as a matter of course:

(A) before being served with a responsive pleading; or

(B) within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar.

*(2) Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

FED. R. CIV. P. 15(a).

■ The Court concludes that Plaintiffs failed to comply with Rule 15 when they filed their second amended complaint. Plaintiffs filed their second amended complaint on June 22, 2009. [Doc. 35]. Plaintiffs previously amended their complaint as a matter of right on March 9, 2009, when they filed their first amended complaint. [*See* Doc. 15]. Having done so, Plaintiffs are not entitled to further amend their pleadings as a matter of right. *Hazewood v. Foundation Financial Group, LLC.,* Civil Action No. 07–0171–WS–B, 2007 WL 1628305, *1 (S.D.Ala. June 1, 2007) (citing *Williams v. Board of Regents of University System of Georgia,* 477 F.3d 1282, 1291 (11th Cir.2007) (recognizing that Rule 15(a) provides that a party "may amend the party's pleading *once* as a matter of course at any time before a responsive pleading is served") (emphasis added)).

Here, Plaintiffs did not seek permission of the Defendants or leave of the Court before filing their second amended complaint. [*See* Dkt.]. As such, in its present posture Plaintiffs' second amended complaint has been filed in violation of the Federal Rules of Civil Procedure.[1]

To the extent that Plaintiffs argue that they believed the Court's June 2, 2009, order gave them permission to file a second amended complaint, this contention is without merit. The Court's order merely advised the parties that Defendants' motions to dismiss were being converted to motions for summary judgment and that the parties had twenty days in which to submit all pertinent materials. [Doc. 27 at 1–2, 7–8]. Specifically, the Court's order provided in part:

As a result, the Court converts Defendants' motions to dismiss to motions for

---

1. The Court also notes that a review of Plaintiffs' second amended complaint shows that it is largely repetitive of their first amended complaint with the exception that Plaintiffs have removed some of the claims and attached various documents. As is discussed in detail below, Defendants are entitled to summary judgment on all of Plaintiffs' claims. Therefore, the second amended complaint does not cure the defects in Plaintiffs' earlier complaint.

summary judgment. *See* FED. R. CIV. P. 12(d). Plaintiff shall therefore have until **June 23, 2009,** to present all the material that is pertinent in response to Defendants' motions. Defendants shall have ten (10) days to file a reply.

[*Id.* at 7]. This language could not have reasonably led Plaintiffs to believe that they were being granted permission to file a second amended complaint.

Accordingly, the undersigned **RECOMMENDS** that Defendants' Motion to Strike Plaintiffs' Second Amended Complaint, [Doc. 37], be **GRANTED** and that Plaintiffs' Second Amended Complaint, [Doc. 35], be **STRICKEN** from the record. However, the Court will consider the documents attached by Plaintiffs to their second amended complaint in ruling on Defendants' converted motions for summary judgment, for two reasons. First, Defendants do not oppose the Court's consideration of these materials. [Doc. 41 at 5]. Second, in ruling on a motion for summary judgment, the Court considers "the pleadings, the discovery and disclosure materials on file, and any affidavits" to determine if there is a genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Unless and until the District Court adopts this portion of the Report and Recommendation ("R & R"), Plaintiffs' second amended complaint remains part of the record.

### C. *Plaintiffs' Construed Rule 56(f) Motion, [Doc. 36]*

■ In their response to the Court's June 2, 2009, order, Plaintiffs argue that summary judgment is premature because discovery has not yet been completed. [Doc. 36 at 6–7]. Plaintiffs further argue that Defendants are "working aggressively to preclude discovery." [*Id.* at 8]. Finally, Plaintiffs argue that Defendants have not produced enough evidence to refute Plaintiffs' numerous claims, and thus, discovery

needs to conclude before any summary judgment motions are filed. [*Id.* at 8]. The Court construes this as a motion under FED. R. CIV. P. 56(f).

Defendants respond that Plaintiffs' contention that summary judgment is premature must fail because Plaintiffs did not satisfy the requirements of FED. R. CIV. P. 56(f), in that they did not demonstrate with specificity how discovery will permit them to rebut Defendants' contentions. [Doc. 39 at 5]. Defendants also argue that Plaintiffs have never asserted that they are unable to respond the converted motion for summary judgment and have already filed three briefs in opposition to the converted motions. [*Id.* at 6]. Finally, Defendants argue that Plaintiffs have offered nothing more than vague assertions that additional discovery is needed to reveal unspecified facts. [*Id.*]

■ Rule 56(f) provides as follows:

**(f) When Affidavits Are Unavailable.** If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) deny the motion;

(2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or

(3) issue any other just order.

FED. R. CIV. P. 56(f). In applying this rule, courts have held that a party opposing a summary judgment motion in this fashion " 'must conclusively justify his entitlement to the shelter of Rule 56(f) by presenting specific facts explaining the inability to make a substantive response as required by Rule 56(e) and by specifically demonstrating how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.' " *Parks v. Doan,* Civil Action file

No. 1:06–cv–1885–TWT, 2007 WL 1482770, *3 (N.D.Ga. May 17, 2007) (citing *Reynard v. NEC Corp.*, 887 F.Supp. 1500, 1508 (M.D.Fla.1995)) (quoting *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896 (5th Cir. 1980)[2]). The party seeking to use Rule 56(f) " 'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts,' but rather he must specifically demonstrate 'how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.' " *Wallace v. Brownell Pontiac–GMC Co.*, 703 F.2d 525, 527 (11th Cir.1983) (quoting *Spence & Green Chem. Co.*, 612 F.2d at 900). The decision to grant or deny a Rule 56(f) motion lies within the sound discretion of the trial judge. *Burks v. Am. Cast Iron Pipe Co.*, 212 F.3d 1333, 1336 (11th Cir.2000); *Carmical v. Bell Helicopter Textron, Inc.*, 117 F.3d 490, 493 (11th Cir. 1997).

█ In this case, Plaintiffs have failed to satisfy the requirements of Rule 56(f). Specifically, they have not described in detail why they cannot properly oppose Defendants' converted motions. While it is true that the Eleventh Circuit has held that "the opposing party need not file an affidavit pursuant to Federal Rule of Civil Procedure 56(f) in order to invoke the protection of that rule because the written representation by [the opposing party's] lawyer, an officer of the court, is in the spirit of Rule 56(f) under the circumstances," *Morrow v. Israel Aircraft Industries, Ltd.*, No. 2:05–cv–295–FtM–34DNF, 2007 WL 2826148, *4 (M.D.Fla. Sept. 25,

2007) (citing *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 570 (11th Cir. 1990) (internal quotations omitted) (alternation in original)), Plaintiffs are not entitled to any relief under Rule 56(f) because they have not set forth any specific facts to justify their need for additional discovery before responding to Defendants' motions. Instead, as Defendants point out, Plaintiffs vaguely assert that additional discovery is necessary because Defendants are attempting to preclude discovery, but they do not point out the nature of what additional discovery is necessary for their claims to withstand summary judgment. As such, Plaintiffs are not entitled to have the Court delay ruling on Defendants' converted motions for summary judgment. *See Wallace v. Brownell Pontiac–GMC Co., Inc.*, 703 F.2d 525, 527 (11th Cir.1983) (holding that a nonmovant seeking the protection of Rule 56(f) may not rely on vague assertions that additional discovery will produce needed but unspecified facts, rather that party must demonstrate to the Court how postponement of the ruling will enable him to rebut the movant's contentions) (internal quotation marks and citations omitted); *see also Robinson v. Adventist Health System*, 259 Fed.Appx. 245, 246 (11th Cir.2007); *Fisher v. Ciba Specialty Chemicals Corp.*, No. 03–0566–WS–B, 2007 WL 2995525, *10 n. 19 (S.D.Ala. Oct. 11, 2007) (denying Rule 56(f) motion because plaintiff failed to show how additional discovery would be germane to the issues raised in the summary judgment motion).

Accordingly, Plaintiff's Rule 56(f), [Doc. 36], motion is **DENIED.**[3]

---

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

**3.** The Court also notes that Plaintiffs' argument that Defendants failed to produce enough evidence for them to respond to the motion is without merit. First, Plaintiffs do not allege what specific evidence Defendants have failed to produce. Second, the Court, after reviewing the evidence submitted by both Defendants and Plaintiffs, concludes that there is ample evidence in the record to decided the merits of Defendants' motions.

### D. Plaintiffs' Failure to Serve Defendant Mew

Defendant Mew has never been served with a summons and complaint in the present action. Under the Federal Rules of Civil Procedure, the plaintiff is tasked with serving a defendant with both a summons and the complaint within the time allowed under FED. R. CIV. P. 4(m). *See* FED. R. CIV. P. 4(c)(1). Rule 4(m) requires the plaintiff to effect service upon the defendant within one hundred twenty (120) days of the filing of the complaint. FED. R. CIV. P. 4(m); *see Lepone–Dempsey v. Carroll County Comm'rs*, 476 F.3d 1277, 1281 (11th Cir.2007). Thus, Plaintiffs were responsible for properly serving Defendant Mew within one hundred twenty days of the date the complaint was filed initially or an amended complaint was filed. Where, as here, plaintiffs failed to serve Defendant Mew properly within the one hundred twenty-day period allotted under the Federal Rules of Civil Procedure,

> the court-on motion or on its own initiative after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be effected within a specified time. But if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m). Approximately seven and a half months have elapsed since the filing of this lawsuit and over four months have passed since Plaintiffs filed their first amended complaint, but Plaintiffs have failed to serve Defendant Mew.[4] Accordingly, the undersigned **RECOMMENDS** that Plaintiff's claims against Defendant Mew be **DISMISSED WITHOUT PREJUDICE** for failure to serve in accordance with FED. R. CIV. P. 4(m). *See Lau v. Klinger*, 46 F.Supp.2d 1377, 1380 (S.D.Ga. 1999); *Madison v. BP Oil*, 928 F.Supp. 1132, 1136 (S.D.Ala.1996).

This Report and Recommendation ("R & R") **SERVES** as notice to Plaintiffs that if they disagree with this recommendation, they must file timely objections to the R & R with the District Court, setting forth appropriate evidence and arguments why their failure to serve Defendant Mew should not result in the dismissal of their claims against him. *See e.g., United States v. Willis*, 273 F.3d 592, 597 n. 6 (5th Cir. 2001) ("We note here that these two concerns [of notice and an opportunity to be heard] were satisfied due to the fact that the magistrate raised the issue and Willis then had an opportunity to argue against the magistrate's findings to the district court."); *O'Connor v. McNeil*, No. 07–60636–CIV, 2008 WL 762651, *3 (S.D.Fla. Mar. 20, 2008) (stating that R & R places petitioner on notice to object to magistrate judge's *sua sponte* recommendation of dismissal of habeas petition as untimely filed).

In this regard, Plaintiffs are **ADVISED** that in order to avoid dismissal for their failure to serve Defendant Mew, they must demonstrate to the District Judge "good cause" for their failure to effectuate service. "Good cause exists 'only when some outside factor [,] such as reliance on faulty advice, rather than inadvertence or negligence, prevented service.' " *Lepone–Dempsey*, 476 F.3d at 1281 (citing *Prisco v. Frank*, 929 F.2d 603, 604 (11th Cir.1991) (*per curiam*) (discuss-

---

**4.** The Court also notes that in their response to Defendants' motion to stay, Plaintiffs appear to concede that they have not served Mew with process and offer no reason for their failure to do so other than that Defendant is likely in possession of Mew's address. [*See* Doc. 38 at 2, ¶ 2 ("Plaintiffs admit the allegations of Paragraph Two of Defendants' Motion to Stay Discovery and Defer Issuance of Scheduling Order. Plaintiffs further state that as a former employer of Defendant Ashley Mew, Defendant Dunbar is likely to possess Mr. Mew's contact information.") ].

ing good cause under former Rule 4(j)), *superceded in part by rule as stated in Horenkamp v. Van Winkle & Co.,* 402 F.3d 1129, 1132 n. 2 (11th Cir.2005)). The serving party (i.e., Plaintiffs) bears the burden of proof with regard to validity of service or good cause for failure to effect timely service. *Sys. Signs Supplies v. U.S. Dep't of Justice,* 903 F.2d 1011, 1013 (5th Cir.1990).

■■■■■ The Court acknowledges that even in the absence of a showing of good cause, courts retain the discretion to extend the time for service of process. *Horenkamp,* 402 F.3d at 1132; *Thompson v. Brown,* 91 F.3d 20, 21 (5th Cir.1996); *Ritts v. Dealers Alliance Credit Corp.,* 989 F.Supp. 1475, 1478 (N.D.Ga.1997) (extending time to effect service in absence of good cause where the defendant had filed a counterclaim against the plaintiff, because if the court dismissed the plaintiff's complaint the plaintiff could re-file the complaint as a compulsory counterclaim in the pending action); *see also Henderson v. United States,* 517 U.S. 654, 663, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996) (recognizing that in the 1993 amendments to the rules, courts were given discretion to extend the one hundred twenty-day period even absent a showing of good cause). Indeed, in *Lepone–Dempsey,* the Eleventh Circuit determined that where "a plaintiff fails to show good cause for failing to effect timely service pursuant to Rule 4(m), the [ ] court *must* still consider whether any other circumstances warrant an extension of time based on the facts of the case." *Lepone–Dempsey,* 476 F.3d at 1282 (emphasis supplied). Circumstances justifying a court's exercise of discretion to extend the time for service include where "the applicable statute of limitations would bar the refiled

action, or [where] the defendant is evading service or conceals a defect in attempted service." *Horenkamp,* 402 F.3d at 1132–33 (citing FED. R. CIV. P. 4(m), advisory committee note, 1993 amendments). As the *Lepone–Dempsey* Court instructed, "[o]nly after considering whether any such factors exist may the [ ] court exercise its discretion and either dismiss the case without prejudice or direct that service be effected within a specified time." *Lepone–Dempsey,* 476 F.3d at 1282. "[T]he decision to extend time for service is within the [c]ourt's sound discretion." *Bailey v. Employment Standards Admin.,* No. CV 107–010, 2007 WL 2710455, *1 (S.D.Ga. Sept. 12, 2007).

As will be discussed in detail below, Defendants are entitled to summary judgment on all of Plaintiffs claims. Accordingly, the Court **RECOMMENDS** that Plaintiffs **NOT** be afforded any additional time in which to serve Defendant Mew.

## II. Defendants' Converted Motion for Summary Judgment, [Doc. 24]

### A. Statement of Facts

The pertinent facts of this case at the summary judgment stage, construed in the light most favorable to the Plaintiff as the non-moving party,[5] are as follows:

Dunbar Armored runs an armored car business in Georgia, among other states, which includes a Norcross, Georgia, office ("Atlanta Office"). First Amended Complaint (hereinafter "Amended Complaint"), [Doc. 15], at ¶ 2. During the relevant time period, Kocopi was Dunbar Armored's Director of Employee Relations, Mew was Dunbar Armored's Branch Manager, and

---

5. In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079,

1085 (11th Cir.2004) (*citing Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1358 (11th Cir.1999))

Johnson was Dunbar Armored's General Manager. *Id.* at ¶¶ 3–5.

On April 21, 2001, Plaintiff Sharon Anderson ("Ms. Anderson"), an African–American female, began working for Dunbar Armored as a Secretary. *Id.* at ¶ 11. On March 10, 2005, Ms. Anderson was promoted to the position of Office Manager at the Atlanta office. *Id.* at ¶ 16. As Office Manager, Ms. Anderson was in charge of the management and secretarial duties of the front office. *Id.* at ¶ 22. She was the sole individual who filled the position of Office Manager at Dunbar Armored's Atlanta office. [Doc. 26–2 (Affidavit of Harry A. Kocopi ("Kocopi Aff.")) at ¶ 3]. While Ms. Anderson was the Atlanta Office Manager, her immediate supervisor was Horace Johnson. Amended Complaint at ¶ 18. During her employment with Dunbar Armored, Ms. Anderson submitted one written complaint to management, which concerned her workload and was dated January 26, 2006. [Doc. 26–2 at 5–6].[6]

In November 2006, Ms. Anderson learned that she was pregnant. Amended Complaint at ¶ 25. In late February 2007, Ms. Anderson began to experience complications with her pregnancy. *Id.* at ¶ 27; [*see also* Doc. 22–2 at 13, Doc. 35–15 at 1].

On March 28, 2007, Johnson issued a written memo addressed to Ms. Anderson. In this memorandum, Johnson stated:

All 201, DOT and training files need to be updated so that the files are in compliance with company expectation. You and your staff were verbally tasked with completing this on more than one occasion by this branch's former Regional Human Resources Manager Sonia Borges and me several months ago yet files remain incomplete. Last week, further instructions were provided to complete the reorganization of the files to which you agreed to manage the DOT and Training File restructuring. Regional Human Resource Manager Clarisa Thompson agreed to assist with this duty. Unfortunately, the assisted efforts of Ms. Thompson are the only part of the project that has begun to date. The agreement was for you and your staff to complete the DOT and Training Files but that project has not begun as of yet. By Wednesday, April 4, 2007, you are required to ensure that all 201, DOT and Training Files arc properly updated and filed back away. In addition, you should ensure that all files, paperwork and notepads are moved from the tops of the file cabinets and properly stored away. Thank you for your efforts to better the processes within the Front Office.

[Doc. 35–14].

Starting on April 10, 2007, Ms. Anderson was placed on FMLA leave after being certified for such leave by her physician. Amended Complaint at ¶¶ 31–34. Ms. Anderson's employer certification form, which was completed by her physician, stated that she was suffering from severe headaches, depression, and anxiety causing stress and complications during her pregnancy. [Doc. 22–2 at 14; Docs. 35–16 to— 19]. Ms. Anderson remained on medical leave until October 1, 2007. Amended Complaint at ¶ 34.

While Plaintiff was employed by Dunbar Armored, at least three other employees had medical leaves in excess of twelve weeks. Darci Dunn,[7] the Senior Benefits Administrator, received approximately six months of extended leave due to pregnan-

---

6. Document and page references are to the CM/ECF document and page numbers appearing at the header of each page as filed with the Clerk's Office.

7. Dunn is Caucasian. Amended Complaint at ¶ 42.

cy. Amended Complaint at ¶ 42; [*see also* Doc. 24–7 at 4, 7]. Shuntell Aikens,[8] a Driver/Guard, also received approximately six months of extended leave due to pregnancy. Amended Complaint at ¶ 40. Additionally, Dunbar Armored employee Charles Vaughn [9] received approximately seventeen weeks of extended leave. Amended Complaint at ¶ 39.

In April 2007, Dunbar hired a temporary employee to perform Ms. Anderson's duties. Amended Complaint at ¶ 52. On July 2, 2007, Kocopi, as Director of Employee Relations for Dunbar Armored, wrote Ms. Anderson a letter concerning her employment status. *Id.* ¶ 53. The letter stated, as follows:

I am writing to inform you that your Family Medical Leave (FMLA) expired on June 25, 2007. Additionally, the last medical certificate we received from you indicated that you would return to work on/about September 3, 2007.

Because your leave has expired at this time and you are not able to return to work for two months, we cannot hold your position open and we are taking steps to fill it. Therefore, should this position be vacant at the time you are able to return to work, we will reinstate you to your former position. However, if it is encumbered at the time you are able to return to work, we will look at other positions in the Atlanta branch, if any, for which you are qualified and you can decided whether to consider other options. In any event, you remain an employee of the company during this time and your status will be assessed at that time.

It will be necessary for you to present a medical certificate indicating your medical status and/or ability to work on/about September 3, 2007. You will continue to be eligible for short-term dis-

ability as long as you meet the conditions for eligibility for that benefit.

Should you have any questions, please feel free to contact me.

[Doc. 24–3 at 2; Doc. 35–21].

On August 27, 2007, Ms. Anderson's physician advised that she had a Cesarian section on August 3, 2007, would need to be out of work until October 1, 2007, and that after that date, she would be able to return to work with no restrictions. [Doc. 35–22].

On September 13, 2007, Branch Manager Mew wrote a letter to Ms. Anderson advising her that the Office Manager position had been filled, but that she could apply for other positions with Dunbar Armored for which she was qualified. Amended Complaint ¶ 54; [*see also* Doc. 24–4 at 2; Doc. 35–23]. Specifically, the letter stated as follows:

I am writing to inform you that the Office Manager position in the Atlanta Branch has been filled. Mr. Harry Kocopi, Director of Employee Relations, notified you in writing on July 2, 2007, that we could not hold your position and were taking steps to fill it. If you would be interested in applying for other positions in the Atlanta Branch for which you are qualified, please feel free to contact us.

Please know that we greatly appreciate your efforts. Should you have any questions, please feel free to contact me.

[*Id.*].

On October 1, 2007, Ms. Anderson contacted Dunbar Armored about returning to work. Amended Complaint at ¶ 55. Since it had filled her Office Manager position, Dunbar Armored offered Ms. Anderson the vacant and available position of Driv-

---

8. Aikens is African–American. [Doc. 24–5 at 4].

9. Vaughn is African–American. [Doc. 24–5 at 8].

er/Guard. *Id.* at ¶ 56. That position provided a different and lesser salary/hourly rate and benefits compared to Ms. Anderson's former position. *Id.* at ¶ 58. Dunbar Armored did not offer to train, or train, Ms. Anderson to perform the Driver/guard job. *Id.* at ¶ 59. On October 1, 2007, Ms. Anderson was terminated from Dunbar Armored because her FMLA leave had expired. *Id.* ¶ 38; [*see also* Doc. 22–2 at 21; Doc. 35–13].

After her employment ended with Dunbar Armored, Ms. Anderson filed for and received unemployment benefits. [Doc. 22–2 at 22; Doc. 35–28].

Ms. Anderson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 19, 2007. Amended Complaint ¶ 48; [*see also* Doc. 24–6 at 2; Doc. 35–30]. Ms. Anderson's EEOC Charge alleges as follows:

I was employed by the company from April 2001 to October 2007, and my most recent position was Office Manager. I was on medically excused maternity leave from April 11, 2007 to October 1, 2007. On October 1, 2007, I was discharged.

I was informed that my Office Manager position had been filled, and I was not offered any other position.

I believe that I was discriminated against based on my sex (female due to pregnancy) in violation of Title VII of the Civil Rights Act of 1964, as amended.

[Doc. 24–6 at 2; Doc. 35–30]. Additionally, the EEOC Intake Questionnaire, completed by Ms. Anderson on October 25, 2007, alleged that she was discriminated against due to her pregnancy and that her position was filled while she was out on maternity leave. [Doc. 24–7 at 3]. Plaintiff further alleged that two other employees that went on 25 maternity leave prior to her "were out more than five months and were able to return to the same position with the same rate of pay." [*Id.*].[10]

10. On an attachment to the charge, Ms. Anderson additionally wrote:

On October 1, 2007, I called my employer to let them know that I had been released from my doctor's care. Prior to this date I received a letter that was dated for September 13, 2007, stating that my position of Office manager had been filled and that I could contact the Branch manager if I had any questions. When I contacted Ashley Mew, Branch manager, on October 1, 2007, I asked him what the letter meant. He said, "that it meant termination based on the fact that the position had been filled and that it was held as long as it could be." I then asked him if this meant that I was no longer employed with the company. He then stated, that I was correct. I asked him if there was paperwork available for me to pick up and he said that he would check and call me back in the morning. I waited to receive call back from Mr. Mew and he never called back.
As a result, I decided to go to the Dunbar Office on October 4, 2007 to see if there was any paperwork available for me to pick

up. While I waited at the office; I was told by Mr. Mew that there was no paperwork to pick up. I explained to him that if I was [indeed] terminated that there should be a copy of the notice of discharge form for me to keep. Mr. Mew then stated that I was still employed by the company. At this time I asked to speak with Horace Johnson, the General Manager, who was also my immediate supervisor at the time of my maternity leave. Mr. Mew said that he was with someone and he would not be available until Monday at 1 pm. I also asked to speak with Clarissa Thompson, the Regional Human Resource Manager and he said that she was also unavailable.
I asked Mr. Mew if he recalled speaking to me on Monday October 1, 2007 and he said yes. I also asked him if he recalled telling me that I was no longer employed with the company. He said "yes, but if I was not qualified for any of the operational positions, (Driver/Guard or Vault), then at this time I was resigning. I said excuse me. And then he said, "you resigned."
[Doc. 24–7 at 6]

The EEOC issued a right to sue letter on August 28, 2008. [Doc. 24–8 at 2; Doc. 35–31].

Although not set forth in a straightforward manner, it appears that Plaintiffs' Amended Complaint, [Doc. 15], alleges the following:

- Count One: Sharon Anderson's claim for Title VII race discrimination, against Dunbar Armored;
- Count Two: Sharon Anderson's claim for Title VII sex discrimination, against Dunbar Armored;
- Count Three: Sharon Anderson's claim for harassment due to her pregnancy under Title VII and § 1981, against Dunbar Armored;
- Count Four: Sharon Anderson's claim for retaliation under Title VII and § 1981, against Dunbar Armored;
- Count Five: Sharon Anderson's Equal Protection claim, against all defendants;
- Count Six: Sharon Anderson's claim for conspiracy to violate civil rights under 18 U.S.C. § 241, against all defendants;
- Count Seven: Sharon Anderson's claim for deprivation of rights under color of law under 18 U.S.C. § 242, against all defendants;
- Count Eight: Sharon Anderson's claim for negligent hiring and retention due to Johnson's harassment, against Dunbar Armored;
- Count Nine: Sharon Anderson's claim for negligent hiring and retention due to Kocopi, Mew and Johnson's discrimination, against Dunbar Armored;
- Count Ten: Sharon Anderson's claim for intentional infliction of emotional distress, against all defendants;
- Count 11: Sharon Anderson's claim for negligent infliction of emotional distress, against all defendants;
- Count Twelve: Sharon Anderson's claim for imputed liability, against Dunbar Armored;
- Count Thirteen: George Anderson's claim for loss of consortium, against all defendants; and
- Count Fourteen: Plaintiffs' claim for punitive damages, against all defendants.

### B. Summary Judgment Standard

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The movant carries the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." *Rice–Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir.2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Burger King Corp. v. E–Z Eating, 41 Corp.*, 572 F.3d 1306, 1313 (11th Cir.2009) ("[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.") (quoting *Catrett, id.*) (internal quotations omitted). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

The nonmovant is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is

a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether to grant summary judgment, the Court must remember that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Accordingly, on summary judgment, "the evidence of the non-movant is to be believed." *Id.* at 255, 106 S.Ct. 2505. The district court should "resolve all reasonable doubts about the facts in favor of the non-movant," *Browning v. Peyton*, 918 F.2d 1516, 1520 (11th Cir.1990), and draw "all justifiable inferences ... in his favor," *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact," summary judgment is not justified. *United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in State of Ala.*, 941 F.2d 1428, 1437 (11th Cir.1991) (quoting *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir.1990)). At the same time, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of

ruling on a motion for summary judgment." *Id.* If the record does not blatantly contradict the nonmovant's version of events, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see also EPL Inc. v. USA Federal Credit Union*, 173 F.3d 1356, 1362 (11th Cir.1999); *Duke v. Cleland*, 884 F.Supp. 511, 514 (N.D.Ga.1995). Summary judgment is properly entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

### C. Discussion
#### 1. Statutory Framework

Ms. Anderson bring claims of employment discrimination under Title VII and 42 U.S.C. § 1981. Both Title VII and § 1981 employ the same analysis in considering employment discrimination claims. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998) (stating that Title VII and § 1981 "have the same requirements of proof and use the same analytical framework").[11] Therefore, the Court explicitly addresses Ms. Anderson's Title VII claims with the understanding that the analysis also applies to her § 1981 claims where appropriate.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right ... to make and enforce con-

---

11. However, 1981 only outlaws discrimination based on race. *See Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987).

tracts[12] . . . as is enjoyed by white citizens . . . ."

### 2. Failure to Exhaust

Defendants argue that Ms. Anderson's Title VII discrimination, hostile work environment, harassment, and retaliation claims based on race are barred because she did not assert these claims in her EEOC Charge. [Doc. 24–2 at 10–13, 16–26].

Plaintiffs do not directly respond to Defendants' arguments that Ms. Anderson's Title VII claims for discrimination, hostile work environment, harassment, and retaliation based on race are barred because Ms. Anderson failed to exhaust her administrative remedies. [*See e.g.*, Doc. 25 at 11]. Instead, Plaintiffs argue that these claims are not barred because they are brought pursuant to § 1981. [*Id.*]. Defendants reply by reiterating that with the exception of Ms. Anderson's sex discrimination claim, Plaintiffs' remaining Title VII claims are barred because she did not raise these claims in the EEOC charge. [Doc. 26 at 5–6].

Then, in response to the Court's June 2, 2009, order, Plaintiffs further respond that Ms. Anderson's racial discrimination claims grow out of her EEOC charge because she complained to the EEOC that Darci Dunn, who is Caucasian, was allowed an extended maternity leave. [Doc. 36 at 10].

Defendants further respond by reiterating that Ms. Anderson never filed a charge of discrimination with the EEOC alleging race discrimination. [Doc. 39 at 7].

■■■ Before filing a Title VII action in court, a plaintiff first must file a charge of discrimination with the EEOC. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir.2004). The purpose of an EEOC charge is twofold: "(1) notification to the employer that a discrimination charge has been lodged with the EEOC; and (2) initiation of the agency's investigation of the complaint." *Pijnenburg v. West Georgia Health System, Inc.*, 255 F.3d 1304, 1306 (11th Cir.2001). By investigating an EEOC charge, the EEOC may "perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Id.* (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)). Moreover, the notification and investigation functions are not "satisfied by the filing of an Intake Questionnaire." *Pijnenburg*, 255 F.3d at 1306.

■■■ On the other hand, a plaintiff may bring Title VII judicial claims that "amplify, clarify, or more clearly focus" the allegations in the EEOC charge. *Gregory*, 355 F.3d at 1279 (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir.1989)). In other words, "a 'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Id.* at 1280 (quoting *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir.2000)). Thus, a plaintiff may not allege new acts of discrimination in a civil action. *Id.* at 1279–80. "Courts are nonetheless 'extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII],'" such that the EEOC charge is not to be "strictly interpreted." *Id.* at 1280 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460–61, 465 (5th Cir.1970)). "[T]he proper inquiry" is whether the "complaint was like or related to, or grew out of, the allegations contained in her EEOC charge." *Id.* As a result, courts examine whether a plaintiff has "stated facts from which a reasonable EEOC in-

---

12. "Make and enforce contracts" encompasses "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

vestigator could have concluded that what she had complained about is [a discriminatory, harassing, or retaliatory act explicitly omitted from the EEOC charge]" due to her EEOC charge. *Id.*

■ Initially, the Court notes that Plaintiffs correctly assert that § 1981 does not require that a plaintiff exhaust her remedies prior to filing a lawsuit. *Price v. M & H Valve Co.*, 177 Fed.Appx. 1, 9 (11th Cir.2006) (holding that a plaintiff is not required to exhaust his administrative remedies before filing a § 1981 action in federal court) (citing *Caldwell v. Nat'l Brewing Co.*, 443 F.2d 1044, 1046 (5th Cir.1971)) (which in turn held that a plaintiff alleging discriminatory employment practices with regard to race "has an independent remedy under § 1981 without respect to exhaustion under Title VII")[13]; *see also Gary v. Menlo Logistics Global Transp. Services, Inc.*, No. 1:06–CV–2139–TWT, 2007 WL 528096, *4 n. 2 (N.D.Ga. Feb. 13, 2007) ("In contrast, § 1981 does not require the exhaustion of remedies."). Here, however, Ms. Anderson has brought claims pursuant to both Title VII and § 1981. *See* Amended Complaint, Counts One, Three and Four. Therefore, the Court must address whether Ms. Anderson's Title VII claims relating to race discrimination properly are before the Court.

■ The Court concludes that Ms. Anderson's EEOC charge did not raise claims of discrimination, hostile work environment, harassment and retaliation based on race. First, Ms. Anderson's EEOC charge makes no mention of any discrimination other than discrimination related to her pregnancy. [*See* Doc. 24–6 at 2].

Second, her claims of discrimination, hostile work environment, harassment, and retaliation claims based on race would not reasonably be expected to rise out of the EEOC investigation into her gender/pregnancy discrimination claims. Nothing in her EEOC charge suggests that she sought to complain about any type of racial discrimination. Additionally, even if her EEOC intake questionnaire somehow expanded the scope of her EEOC charge, her intake questionnaire makes no mention, nor gives any indication, that she intended to complain about any type of racial discrimination. [*See* Doc. 24–7]. For example, given the opportunity to check boxes concerning her claims of discrimination, Ms. Anderson only checked the "Pregnancy" box. [*Id.* at 3].[14] In addition, in a portion of the questionnaire allowing for a narrative answer, Ms. Anderson made no reference to race discrimination, stating instead as follows:

> Upon release from my doctor's care, I was told by Ashley Mew that I was terminated based on the fact that my position was filled because it was held as long as it could be held. I feel as though I was discriminated against be-

**13.** Although *Price* and *Green v. Elixir Indus., Inc.*, 152 Fed.Appx. 838, 841 (11th Cir.2005), cited by Defendants, are unpublished decisions and therefore are not binding precedent, 11th Cir. R. 36–2; *Bravo v. United States*, 532 F.3d 1154, 1164 n. 5 (11th Cir. 2008), *Caldwell* is a published decision and thus is binding precedent. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

**14.** The Intake Questionnaire specifically informed Ms. Anderson:

> ... If you feel that you were treated worse than those not of your race or you have other evidence of discrimination, you should check (✓) **RACE**. If you feel the adverse treatment was due to multiple reasons, such as your sex, religion and national origin, you should check all three.

[Doc. 24–7 at 3 (emphasis in original)].

cause there were at least two other employees that took maternity leave prior to me and they were out for more than five months but they were able to return to the same position with the same rate of pay.

[*Id.*]. Also, although Ms. Anderson did mention Dunn by name in her EEOC questionnaire, she only complained that Dunn was given six months of maternity leave and allowed to return to her position, but mentioned nothing of Dunn's race. [*Id.* at 4, 5 & 7].

Accordingly, these allegations would not lead a reasonable EEOC investigator to conclude that Ms. Anderson complained about discriminatory, harassing, or retaliatory actions based on race. *See Hillemann v. Univ. of Central Fla.,* 167 Fed. Appx. 747, 749–50 (11th Cir.2006) (where EEOC charge contained claim of age discrimination, plaintiff barred from raising race and sex discrimination and retaliation in judicial complaint); *Cobb v. Marshall,* 481 F.Supp.2d 1248, 1255 (M.D.Ala.2007) (EEOC charge for race and age discrimination and retaliation did not reasonably give rise to investigation into claim of sex discrimination); *Richardson v. JM Smith Corp.,* 473 F.Supp.2d 1317, 1331 (M.D.Ga. 2007) (holding that where EEOC charge made no reference whatsoever to a "religion" claim but only race and the factual statements given all pertained to racial discrimination claim, religion claim barred); *Gary,* 2007 WL 528096 at *6 ("Without some mention in Plaintiff's factual statement of discrimination during the course of his employment, the EEOC had no reason to investigate any adverse employment actions other than Plaintiff's termination.").

As a result, the undersigned concludes that Ms. Anderson did not exhaust her administrative remedies for her Title VII claims of discrimination, hostile work environment, harassment and retaliation claims based on race.

Accordingly, the undersigned **RECOMMENDS** that Defendants' construed motion for summary judgment be **GRANTED** on Plaintiffs' Title VII claims of discrimination, hostile work environment, harassment and retaliation based on race. If the District Court disagrees with this conclusion, the undersigned discusses the merits of these claims below.

### 3. Title VII Gender Discrimination–Disparate Treatment

#### a. Statutory Framework

 As stated above, Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ...." 42 U.S.C. § 2000e–2(a)(1). Under the Pregnancy Discrimination Act ("PDA"),[15]

> [t]he terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work.

42 U.S.C. § 2000e(k).[16] The Pregnancy Discrimination Act amended Title VII by providing that the prohibition against em-

---

**15.** "In 1978, Congress amended Title VII by enacting the Pregnancy Discrimination Act ...." *Spivey v. Beverly Enters., Inc.,* 196 F.3d 1309, 1312 (11th Cir.1999).

**16.** Ms. Anderson apparently attempts to raise gender discrimination under § 1981. Section 1981 was enacted to prevent discrimination based on race, not discrimination based on sex. *See Little v. United Techs., Carrier Transicold Div.,* 103 F.3d 956, 960–961 (11th Cir.

ployment-related discrimination "on the basis of sex" includes discrimination based on pregnancy, childbirth, or related medical conditions. *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1312–13 (11th Cir.1994). The Eleventh Circuit has held that the "PDA does not require that employers give preferential treatment to pregnant employees." *Spivey v. Beverly Enter. Inc.*, 196 F.3d 1309, 1312 (11th Cir.

1997). Therefore, any claim for sex discrimination brought pursuant to § 1981 must fail "because § 1981 provides rights and remedies only with respect to racial discrimination." *Givens v. Chambers*, 548 F.Supp.2d 1259, 1269 (M.D.Ala.2008) (citing *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir.1998); *Anderson*, 156 F.3d at 170) ("It is ... settled that Section 1981 does not prohibit discrimination on the basis of gender [.]") (citing *Runyon v. McCrary*, 427 U.S. 160, 167, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *see also Hervey v. City of Little Rock*, 787 F.2d 1223, 1233 (8th Cir.1986) ("Since § 1981 does not apply to sex discrimination, [plaintiff] could only recover on this claim under § 1983."); *St. Louis v. Alverno College*, 744 F.2d 1314, 1317 (7th Cir.1984) (same); *Lee v. Anderson Columbia Co., Inc.*, No. 5:09–cv–12/RS/EMT, 2009 WL 789680, *2 (N.D.Fla. Mar. 23, 2009) (same). Accordingly, to the extent that Ms. Anderson's attempted to raise sex discrimination/harassment/hostile work environment/retaliation claims under § 1981, the Court **RECOMMENDS** that summary judgment be **GRANTED** against her on those claims.

17. Ms. Anderson does not explicitly state that she is relying on circumstantial evidence, but her Amended Complaint and response to Defendants' construed motions for summary judgment allege only circumstantial evidence of the *prima facie* case. In any event, Plaintiffs have not pointed the Court to any direct evidence in the record.

If a plaintiff demonstrates direct evidence of discrimination, an employer must prove that the same employment decision would have been made absent any discriminatory intent. *Young v. Gen. Foods Corp.*, 840 F.2d 825, 828 (11th Cir.1988); *Buckley v. Hosp. Corp. of Am., Inc.*, 758 F.2d 1525, 1529–30 (11th Cir.1985). Direct evidence is "that [which] reflects 'a discriminatory or retaliatory attitude correlating to the discrimination

1999). Further, "an employer violates the PDA when it denies a pregnant employee a benefit generally available to temporarily disabled workers holding similar job positions." *Id.* at 1313.

### b. Circumstantial Evidence

▮▮▮▮ When a party relies on circumstantial evidence to prove their case of discrimination, as in the instant case,[17]

or retaliation complained of by the employee.'" *Van Voorhis v. Hillsborough County Bd. of County Comm'rs*, 512 F.3d 1296, 1300 (11th Cir.2008) (quoting *Wilson*, 376 F.3d at 1086). Direct evidence of discrimination is evidence that " 'if believed, proves [the] existence of [a] fact in issue without inference or presumption.'" *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir.1999) (quoting *Burrell v. Bd. of Trustees of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir.1997) (alterations in original)). Direct evidence consists only of " 'the most blatant remarks, whose intent could be nothing other than to discriminate' on the basis of some impermissible factor." *Id.* (quoting *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir.1989)). A statement that merely "suggests, but does not prove, a discriminatory motive, ... is circumstantial evidence." *Wilson*, 376 F.3d at 1085. They must be made by a person involved in the challenged decision. *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1105 (11th Cir. 2001). Furthermore, the statements must "directly relate in time and subject to the adverse employment action at issue." *Scott v. Suncoast Beverage Sales Ltd.*, 295 F.3d 1223, 1227 (11th Cir.2002).

A statement by an assistant store manager "we won't be hiring you ... because of the conditions of your pregnancy ... [y]ou're welcome back after you've had the baby" constitutes direct evidence of discrimination. *See EEOC v. Wal-Mart Stores, Inc.*, 156 F.3d 989, 990–92 (9th Cir.1998). Direct evidence in pregnancy discrimination cases is generally in the from of an admission by a supervisor or decisionmaker that the employee was suspended because she was pregnant. *See Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir.1994). Moreover, a plaintiff can demonstrate direct evidence of pregnancy discrimination if she has a statement by an employer that it took pregnancy into account in making an employment decision. *See Smith*

courts use the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir.2005); *see also Armstrong*, 33 F.3d at 1312 (holding that the analysis applied to pregnancy discrimination cases is the same as analysis in other Title VII sex discrimination cases); *Brockman v. Avaya, Inc.*, 545 F.Supp.2d 1248, 1252 (M.D.Fla.2008) (applying *McDonnell Douglas* framework to PDA claim). Under the *McDonnell Douglas* framework, a plaintiff must establish first a *prima facie* case of discrimination. *See, e.g., Hicks*, 509 U.S. at 506, 113 S.Ct. 2742. If a plaintiff establishes a *prima facie* case, she has created an inference of discrimination, and the defendant has the burden of producing a legitimate, non-discriminatory reason for its employment action. This burden is "exceedingly light." *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir.1997). "[T]he defendant must merely proffer non-[discriminatory] based reasons, not prove them." *Meeks v. Computer Assocs. Int'l.*, 15 F.3d at 1013, 1019 (11th Cir.1994).

■■■■■ If the defendant meets this light burden, then the inference of discrimination is erased, and the burden shifts back to the plaintiff "to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext for discrimination." *Holifield*, 115 F.3d at 1565. To determine whether an

employer's reason is pretext, courts examine whether the evidence reveals " 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.' " *Vessels v. Atlanta Ind. Sch. Sys.*, 408 F.3d 763, 770 (11th Cir.2005) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 725 (2004)) (overruled on other grounds by *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006)). A finding that the employer's reason is not worthy of credence may, but not always, prove pretext because the evidence still must show that the employer was motivated by intentional discrimination. *See Meeks*, 15 F.3d. at 1019 n. 1 (11th Cir. 1994) (citing *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742). Despite this burden-shifting framework, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir.2004) (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089).

### i. Prima Facie Case

Initially, the Court notes that it is unclear whether Ms. Anderson is bringing regular gender discrimination claims in addition to gender discrimination claims under the PDA, or just gender discrimination claims under the PDA. For instance, she alleges that she is bringing claims "due to sex in comparison to male employees in violation of Title VII as codified in 42 U.S.C. § 2000e, et seq....." Amended

---

*v. F.W. Morse & Co.*, 76 F.3d 413, 421 (1st Cir.1996). Additionally, statements made by an employer to third parties may be direct evidence of discriminatory animus. *See EEOC v. Beverage Canners, Inc.*, 897 F.2d 1067, 1069–71 (11th Cir.1990).

Having searched the record, the Court has not located any evidence which satisfies this direct evidence standard.

Complaint at 23 (paragraph heading). Additionally, her amended complaint alleges that male employees were allowed to return to their positions with no "change in their position[s] of employment, rate in pay or benefits." *Id.* at 24. However, in the factual section of her amended complaint, Ms. Anderson set forth facts which only indicate that she was discriminated against on the basis of her pregnancy. *Id.* at ¶¶ 25–39. Out of an abundance of caution, therefore, the Court assumes Ms. Anderson is bringing both regular gender and PDA gender discrimination claims.

■ To establish a *prima facie* case under the PDA and Title VII "a plaintiff must establish that (1) she is a member of a group protected by Title VII, (2) she is entitled to, or qualified for her position, (3) she suffered an adverse employment action, and (4) she was treated less favorably than similarly situated employees who are not members of her protected class." *Brockman,* 545 F.Supp.2d at 1252.

Defendants implicitly concede that Ms. Anderson satisfies the first three requirements of a *prima facie* case, that is, that she is a member of a protected class, that she was qualified for her position, and that she suffered an adverse employment action. [Doc. 24–2 at 13–16 (indicating that Ms. Anderson satisfies class membership, job qualifications, and adverse employment action)]. Therefore, the Court will only examine the fourth requirement of the *prima facie* case.

### Similarly–Situated Comparator

In their amended complaint, Plaintiffs allege that Defendant Dunbar Armored discriminated against Ms. Anderson on the basis of sex because male employees who exercised in excess of twelve weeks of medical leaves of absence were allowed to return to their positions of employment with no change in their position, rate of pay, or benefits. Amended Complaint at ¶ 67.

Defendants argue that Ms. Anderson cannot state a claim for sex discrimination because her amended complaint expressly alleges that two other pregnant females received six months of medical leave due to complications with their pregnancies and were permitted to return to their former positions. [Doc. 242 at 14]. Next, Defendants argue that the one male employee identified by Plaintiffs as a comparator to Ms. Anderson, Charles Vaughn, is not a proper comparator because he was afforded less leave, and was treated less favorably, than Ms. Anderson. [*Id.* at 15].

Plaintiffs respond that Ms. Anderson has stated a viable claim for sex and pregnancy discrimination because "she was not allowed to retain her employment after the completion of her pregnancy-related medical leave of absence, in contrast to Mr. Vaughn, who was allowed to retain his employment after he completed his extended leave of absence." [Doc. 25 at 12].

Defendants reply that Ms. Anderson cannot make out a valid claim for sex discrimination because both male and female employees were treated similarly to her. [Doc. 26 at 6–7].

In response to the Court's June 2, 2009, Order, Ms. Anderson further responds after she returned from her extended medical leave, she was not expressly offered or provided any training for the position of Driver/Guard and that such a position (1) is not equivalent to any position she had been trained for, (2) paid less money, and (3) had fewer benefits. [Doc. 36 at 11–12]. Defendants further reply by reiterating that two of the three comparators identified by Plaintiff were pregnant females. [Doc. 39 at 9–10].

■ Differential treatment may be established by showing that a similarly situated employee that was not in a protected class was treated more favorably.

*Brockman,* 545 F.Supp.2d at 1255. The Eleventh Circuit has held that:

> In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.... We require that the quantity and quality of the comparators' misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples and oranges.

*Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir.1999) (citations omitted). However, in a pregnancy discrimination case, a plaintiff need not identify specific non-pregnant individuals treated differently from her, if the employer violated its own policy in terminating her. *Armindo v. Padlocker,* 209 F.3d 1319, 1321 (11th Cir. 2000).

▆▆▆ The Court concludes that Ms. Anderson cannot establish a *prima facie* case on either her pregnancy-related or non-pregnancy-related gender discrimination claims. Despite her assertions to the contrary, she has not produced, or even alleged, that a non-pregnant employee, or a male employee, was treated more favorably than she was.

In their Amended Complaint, she alleges that Dunbar Armored allowed two other pregnant women—Aikens and Dunn—to have approximately six months of leave while they were pregnant. Amended Complaint at ¶¶ 40, 42. By alleging that Dunbar Armored allowed other pregnant women to take medical leave in excess of twelve weeks, Ms. Anderson is essentially arguing that it was unfair for Dunbar Armored not to allow her to return to her position of Office Manager since it had

allowed other pregnant women to return to their previous positions. Such allegations have no bearing on Ms. Anderson's ability to prove discrimination under the PDA since these allegations only show that she was treated differently than other pregnant women. In fact, discrimination based on pregnancy cannot be inferred from such allegations because the comparison makes it impossible for the Court to determine whether Dunbar Armored's decision to fill the Office Manager position was related to Ms. Anderson's pregnancy or was made for some other reason. *See McQueen v. AirTran Airways, Inc.,* No. 3:04–CV–180–RS–EMT, 2005 WL 3591100, *8 (N.D.Fla. Dec. 30, 2005) ("Such an assertion, assuming arguendo that it is true, would prove only that McQueen was treated differently from other pregnant employees. It would not support an inference that McQueen was discriminated against because she was pregnant.").

Next, Ms. Anderson contends that disparate treatment is shown by Vaughn's receipt of in excess of twelve weeks of FMLA leave but then he was allowed to return to his same position and maintain his same rate of pay. [Doc. 25 at 12–13]. However, Vaughn is not a proper comparator because Ms. Anderson received approximately six months, or twenty-six weeks, of medical leave. In contrast, Vaughn received seventeen weeks of medical leave.[18] Amended Complaint at ¶ 39. Thus, Dunbar Armored actually treated Ms. Anderson *more* favorably than it did Vaughn since she received approximately nine more weeks of leave than he did. *See Mathis v. Leggett and Platt,* 263 Fed. Appx. 9, 13 (11th Cir.2008) (holding that female co-workers who, unlike male employee, had not violated employer's attendance policy in five months of 12–month

---

**18.** Defendants do acknowledge that Mr. Vaughn's position of Armored Car Driver was held for a comparable period to that of Ms. Anderson. (Kocopi Aff. at ¶ 6).

period were not similarly situated, and thus male employee was not treated less favorably than other similarly situated employees outside his protected group when he was terminated for violating policy and they were retained); *see also Armindo,* 209 F.3d at 1321 ("The district court properly held Armindo failed to demonstrate that she was fired for any reason other than her poor attendance. Armindo did not attempt to show that she was treated differently from similarly situated non-pregnant employees who missed a comparable amount of work.").

Finally, the Court concludes that Ms. Anderson also has not stated a *prima facie* case for her PDA claim. In response to Defendants' motion, she alleges that the Office Manager position was initially filled by a non-pregnant *temporary* employee during her medical leave. [Doc. 18 at 7]. However, this allegation is irrelevant as to whether the person who ultimately was hired to *permanently* fill Ms. Anderson's position was outside of her protected class. Plaintiffs have not alleged, nor produced evidence to show, that the permanent individual hired to fill the Ms. Anderson's Office Manager position was a non-pregnant individual. Therefore, Ms. Anderson cannot show that similarly situated employees outside of her protected class were treated more favorable than she was.

Accordingly, the Court concludes that Defendants' construed motion for summary judgment should be **GRANTED** on Ms. Anderson's pregnancy and non-pregnancy related sex discriminated claims. In the event the District Court disagrees with the undersigned's *prima facie* analysis, the Court addresses Defendants' legitimate non-discriminatory reason and pretext.

### ii. Legitimate, Non–Discriminatory Reason

If a Title VII plaintiff establishes a *prima facie* case, under *McDonnell Douglas,*

the burden of production then shifts to the employer to rebut a plaintiff's *prima facie* case, by articulating a legitimate, nondiscriminatory reason for its employment decision. There is no requirement that the employer prove its reason. Instead, the employer must only introduce admissible evidence to support the challenged employment actions. *Burdine,* 450 U.S. at 254–55, 101 S.Ct. 1089. This burden is "exceedingly light." *Holifield,* 115 F.3d at 1564 (11th Cir.1997). However, "[a]lthough this burden is not onerous, ... neither is it a mere formality." *Walker v. Mortham,* 158 F.3d 1177, 1184 (11th Cir. 1998) (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089). At this stage, a defendant-employer must:

> clearly set forth, through the introduction of admissible evidence, the reason for its adverse employment decision, and that reason must be legally sufficient to justify a judgment for the defendant.

*Id.* The Eleventh Circuit has held that there must be "evidence that asserted reasons for discharge were actually relied on or the reasons are not sufficient to meet defendant's rebuttal burden." *IMPACT v. Firestone,* 893 F.2d 1189, 1194 (11th Cir. 1990) (quoting *Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 775 (11th Cir. 1982)).

Defendants appear to assert that even if Plaintiffs could establish a *prima facie* case, they have identified legitimate, non-discriminatory reasons for not restoring Ms. Anderson to the position of Office Manager upon her return from maternity leave, namely, that Ms. Anderson's FMLA leave had expired, she was the sole person who filled the position of Office Manager at the Atlanta Branch, and as such, her position was unique. Therefore, after five months of being on medical leave, Defendant Dunbar advised Ms. Anderson that it could no longer hold the position for her. [Doc. 26 at 10 n. 3; Doc. 26–2 at 3 (Kocopi's second affidavit, at ¶ 5) ].

■ Defendants have satisfied their burden of producing a legitimate, non-discriminatory reason for not holding Ms. Anderson's position of Office Manager until she returned from her extended maternity leave—that Plaintiff's FMLA leave had expired and the position of Office Manager is unique and she was the sole person who filled the position, so the position could not be held for her any longer. *Holifield,* 115 F.3d at 1564 (noting that objective and non-biased reason satisfied employer's production burden); *Austin v. Fuel Systems,* 379 F.Supp.2d 884, 902 (W.D.Mich.2004) ("An employee may be terminated for failing to return to work after her FMLA leave has expired."); *Shufelt v. Town of Chatham, N.Y.,* 499 F.Supp.2d 173, 181 (N.D.N.Y.2007) (staffing needs constitutes legitimate non-discriminatory reason).

Thus, Defendants have satisfied their burden of production, and the burden shifts to Plaintiff to demonstrate pretext. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997) ("Once a defendant satisfies its intermediate burden of production, and the initial presumption of discrimination accompanying the prima facie case has been eliminated, the plaintiff has the opportunity to discredit the defendant's proffered explanations for its decision.").

### iii. Pretext

To survive summary judgment at this stage, Ms. Anderson must provide evidence that creates a genuine issue of material fact that Defendants' articulated, nondiscriminatory reasons are, instead, pretext for unlawful gender and pregnancy discrimination. *McDonnell Douglas,* 411 U.S. at 804–07, 93 S.Ct. 1817; *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (finding that "plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence") (internal citations omitted); *Combs,* 106 F.3d at 1528. Put another way, the "pretext analysis focuses on a narrow question: Would the proffered evidence allow a reasonable factfinder to conclude that the articulated reason for the decision was not the real reason?" *Walker v. Prudential Property and Cas. Ins. Co.,* 286 F.3d 1270, 1276 (11th Cir.2002). In evaluating a summary judgment motion, "the district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson,* 405 F.3d at 1289 (quoting *Combs,* 106 F.3d at 1538) (internal citations omitted). A finding that the employer's reason is not worthy of credence may, but not always, prove pretext because the evidence still must show that the employer was motivated by intentional discrimination. *See Meeks,* 15 F.3d at 1019 n. 1 (citing *Hicks,* 509 U.S. at 511, 113 S.Ct. 2742). In attempting to show that the employer's reasons are pretextual, "[i]f the [employer's] proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it." *Springer v. Convergys Customer Management Group, Inc.,* 509 F.3d 1344, 1350 (quoting *Wilson,* 376 F.3d at 1088) (alterations added).

"If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Cooper,* 390 F.3d at 725 (quoting *Chapman v. AI Transp.,* 229 F.3d 1012, 1024–25 (11th Cir.2000) (*en banc* )); *accord Crawford v. City of Fairburn,* 482 F.3d

1305, 1308 (11th Cir.2007) (recognizing that "[i]f the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment").

Ms. Anderson argues that Defendants' asserted reasons are pretextual because Defendants have not provided any reason as to why an interim employee could not have filled the Office Manager position until Ms. Anderson returned from her extended medical leave. [Doc. 36 at 10]. She also asserts that despite Dunn having a job that was also of "essential importance" to Dunbar, she was allowed to return to her same position following her extended medical leave. [*Id.* at 10–11]. Ms. Anderson also argues that although she was offered the position of Driver/Guard upon her return from medical leave, she was not offered or provided any training for said position and would have been required to take a reduction in pay and benefits with the Driver/Guard position. [*Id.* at 12].

Defendants respond that Ms. Anderson has not made out a viable claim for gender and pregnancy discrimination because she has not supported her claims with specific facts or details. [Doc. 39 at 7 n. 3].

 The Court concludes that Ms. Anderson cannot establish pretext or a genuine issue of material fact on her gender and pregnancy discrimination claims. First, she does not support her pretext arguments with anything more than conclusory allegations and has not come forward with any evidence to show that Defendants' proffered reasons are pretext for unlawful discrimination. Such conclusory allegations are insufficient to withstand summary judgment. *Taylor v. Nix*, 240 Fed.Appx. 830, 836 (11th Cir.2007) (citing *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir.2000)).

 Second, the evidence put forth by Defendants—specifically Kocopi's April 24, 2009, affidavit—shows that Plaintiff was the only individual who filled the position of Office Manager at the Atlanta Branch; as such, her position was unique and, therefore, more important to fill. [Doc. 26–2 at 3]. Kocopi also avers that after Ms. Anderson exhausted her FMLA leave, and after Defendant Dunbar Armored held her position for nearly five months, Ms. Anderson was advised that it was going to attempt to fill her position. [*Id.*]. Additionally, Kocopi testified that a decision on whether to hold a position is made on a case-by-case basis and "many circumstances are considered, including the specific nature of the position, the operating needs of the business, the passage of time, and medical information we receive." [*Id.*]. Ms. Anderson has not properly refuted this evidence, but instead relies upon mere argument and evidence which does not address the merits of Defendants' assertions. Such a showing is insufficient to show pretext. "To demonstrate pretext, the plaintiff may not simply 'recast an employer's proffered nondiscriminatory reason[ ] or substitute his business judgment for that of the employer.'" *Thomas v. CVS/Pharmacy*, 336 Fed. Appx. 913, 914, 2009 WL 1956256, *2 (11th Cir.2009) (quoting *Chapman*, 229 F.3d at 1030). Instead, a plaintiff must "meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Id.* That is, a plaintiff must be able to show both that the employer's proffered reason was false and that the true motive for the action was discriminatory. *See Hicks*, 509 U.S. at 515, 113 S.Ct. 2742. The Court does not act "as a super-personnel department that reexamines an entity's business decisions"; rather, the inquiry is limited to "whether the employer gave an honest explanation of its behavior." *Id.* (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991)).

The Court recognizes that Plaintiff argues that much of the evidence that would support her claims is possessed by Defendants and has not been produced. [Doc. 36 at 6–9]. However, the Court presumes that Ms. Anderson would know the facts which support her claims. She could have submitted her own affidavit as evidence in opposing Defendants' motions. For example, she could have attempted to demonstrate that the office manager position which she held was not "unique" as claimed by Defendants, or that the positions held by those she claims are her comparators were of the same or similar uniqueness, yet were the comparators were allowed to return to these positions. While not exhaustive, evidence of this sort might create a material issue of fact as to pretext. However, as the record stands now, there is no evidence beyond Ms. Anderson's conclusory allegations to support her claims.

As a result, the evidence in the record does not show that, or create a factual issue as to whether, unlawful discrimination was a reason why Defendants did not hold open Ms. Anderson's Office Manager post until extended maternity leave ended. Therefore, Plaintiff has not demonstrated pretext on her gender and pregnancy discrimination claims.

Accordingly, the Court **RECOMMENDS** that Defendants' motion for sum-

mary judgment should be **GRANTED** on Plaintiffs' gender and pregnancy discrimination claims.

### 4. Racial Discrimination

#### a. Prima Facie Case

■ To establish a *prima facie* case of race discrimination, a plaintiff must show that "(1) [s]he is a member of a protected class; (2)[s]he was subjected to adverse employment action; (3) h[er] employer treated similarly situated [Caucasian] employees more favorably; and (4)[s]he was qualified to do the job." *McCann v. Tillman,* 526 F.3d 1370, 1373 (11th Cir.2008).[19] The Eleventh Circuit has repeatedly stated that the formulation of a *prima facie* case is not onerous. *See, e.g., Vessels,* 408 F.3d at 769.

Defendants implicitly concede that Ms. Anderson can establish the first, second, and fourth elements of a *prima facie* case. [*See* Doc. 24–2 at 12–13 (arguing that Ms. Anderson has not shown a similarly situated comparator)]. Thus, the Court will only examine whether similarly situated persons outside her protected class were treated more favorably than her.

#### *Similarly Situated Comparator*

Defendants argue that Ms. Anderson cannot establish a claim for racial discrimination because two of the three comparators she identifies are of the same protected class (African–American) as she is. [Doc. 24–2 at 12].[20] Defendants also argue

19. Ms. Anderson does not expressly state that she relies on circumstantial evidence of racial discrimination. However, just as in regards to her gender and pregnancy discrimination claims, the Court has scoured the record for any direct evidence of racial discrimination. Since it has found none, the Court analyzes Ms. Anderson's racial discrimination claims under the circumstantial evidence paradigm. *Reynolds v. CLP Corp.,* 812 F.2d 671, 674 (11th Cir.1987).

20. The Court also notes that Horace Johnson, the alleged decisionmaker, like Ms. Anderson,

is African–American. [Doc. 24–5 at 2–3, 6]. While this fact does not preclude a finding of racial discrimination, *see Billingsley v. Jefferson County,* 953 F.2d 1351 (11th Cir.1992), "it is extremely difficult for a plaintiff to establish discrimination where the allegedly discriminatory decision-makers are within the same protected class as the plaintiff." *Moorer v. City of Montgomery,* No. 2:06–CV–672–WKW, 2008 WL 696889, *6 (M.D.Ala. Mar. 13, 2008) (citing *Welch v. Delta Air Lines, Inc.,* 978 F.Supp. 1133, 1153 (N.D.Ga.1997))

that the one non-African-American comparator (Dunn) identified by Ms. Anderson was treated in the exact same manner as Aikens, demonstrating that Dunbar Armored did not engage in discrimination based on race. [*Id.*]. In response, Ms. Anderson argues that Dunn, a Caucasian employee, was allowed to return to her position as Senior Benefits Administrator after her return from an extended medical leave.[21] [Doc. 36 at 11]. Defendants reply by reiterating their original arguments. [Doc. 39 at 8].

In order to establish the similar comparator element, the plaintiff and the employee she identifies as a comparator must be similarly situated "in all relevant respects." *Wilson,* 376 F.3d at 1091 (quoting *Holifield,* 115 F.3d at 1562); *see also Corbitt v. Home Depot U.S.A., Inc.,* 573 F.3d 1223, 1251 (11th Cir.2009) (quoting *Wilson, id.*); *Dickinson v. Springhill Hosps., Inc.,* 187 Fed.Appx. 937, 939 (11th Cir.2006) ("To show that employees are similarly situated, the plaintiff must establish that the employees are 'similarly situated in all relevant respects.'") (internal citations omitted). The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer. *Wilson,* 376 F.3d at 1091 (citing *Silvera v. Orange County Sch. Bd.,* 244 F.3d 1253, 1259 (11th Cir.2001)). "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate *where no other evidence of discrimination is present.*" *Holifield,* 115 F.3d at 1562 (citing *Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 182 (1st Cir.1989) (emphasis added)).

### (i) Shuntell Aikens

The Court concludes that Aikens is not a proper comparator. The evidence shows that Aikens is an African–American female, and therefore, in the same protected class as Ms. Anderson. [Doc. 24–5 at 2–3, 4]. Since both Ms. Anderson and Aikens are in the same protected class, Aikens is not a proper comparator for the purposes of Plaintiffs *prima facie* case. *See Hammons v. George C. Wallace State Community College,* 174 Fed.Appx. 459, 463 (11th Cir.2006) (finding that Plaintiff failed to establish a *prima facie* case on her disparate treatment claim because she was replaced by someone within her same protected class); *McCloud v. Potter,* 506 F.Supp.2d 1031, 1047 (S.D.Ala.2007) (African–American female employee failed to establish that she was similarly situated to all comparator employees because employee's list of persons whom she felt were more favorably treated included persons in same protected classes); *Sanders v. City of Montgomery,* 319 F.Supp.2d 1296, 1313 (M.D.Ala.2004) (selection of African–American man prevented plaintiff from articulating a *prima facie* case for promotion); *White v. Sears, Roebuck, & Co.,* No. 1:03–cv–002–GET, 2006 WL 2443848, *22 (N.D.Ga. Aug. 21, 2006) (finding that Plaintiff could not establish *prima facie* case for failure to promote where person promoted was of same protected class).

### (ii) Charles Vaughn

Initially, the Court notes that Defendants argue that Vaughn is not a proper comparator to Ms. Anderson because both Vaughn and Ms. Anderson are African–American, and therefore, in the same protected class. However, an African–

---

21. The Court notes that Ms. Anderson made this argument in the section of her brief pertaining to the scope of her EEOC charge. [Doc. 36 at 9–11]. Nonetheless, the Court gives her the benefit of the doubt and assumes that she was making this argument in support of her racial discrimination claim.

American male is not within an African–American female's protected class for purposes of a *prima facie* case. *See Jefferies v. Harris County Community Action Ass'n*, 615 F.2d 1025, 1034 (5th Cir.1980) ("Therefore, we hold that when a Title VII plaintiff alleges that an employer discriminates against black females, the fact that black males and white females are not subject to discrimination is irrelevant and must not form any part of the basis for a finding that the employer did not discriminate against the black female plaintiff.").

■ Nonetheless, the Court concludes that Ms. Anderson has failed to demonstrate that Vaughn is a proper comparator. As discussed above, Vaughn did not receive a comparable amount of leave to Ms. Anderson since he received approximately 17 weeks of leave while Ms. Anderson received approximately 26 weeks of leave. More important, Vaughn was an armored car driver, [Doc. 26–2 at 4], and Ms. Anderson has not shown how that position was similar to hers.[22] Thus, Vaughn is not a proper comparator.

### (iii) Darci Dunn

■ The Court concludes that Ms. Anderson has met her burden of showing that Dunn is a proper comparator. Defendants argue that Dunn is not a proper comparator because Dunn (Caucasian) and Aikens (African–American) were both allowed approximately six months of medical leave and were both allowed to return to their previous positions, therefore demonstrating that Dunbar Armored did not treat employees differently because of race. [Doc. 24–2 at 12–13]. However, the relevant inquiry is whether Dunn is a

proper comparator to Ms. Anderson, not Aikens. Whether Dunn and Aikens received the same treatment after returning from maternity leave is not relevant to Plaintiffs' claims.

Here, the evidence shows that both Anderson and Dunn were both allowed approximately six months of maternity leave. Amended Complaint at ¶¶ 34, 42. Following their respective maternity leaves, Dunn was allowed to return to her previous position of Human Resources Benefits Coordinator while Ms. Anderson was not allowed to return to her position of Office Manager. *Id.* at 61.

Defendants have not presented any evidence to demonstrate that Dunn's Senior Benefits Administrator position was not similar for comparator purposes. Therefore, for purposes of the pending converted motion, the Court finds that Ms. Anderson has established, or at least created a material fact question pertaining to, a *prima facie* case as to discriminatory treatment vis-a-vis Dunn.

### b. Legitimate, Non–Discriminatory Reason

As previously discussed, if a Title VII plaintiff establishes a *prima facie* case, the burden of production then shifts to the employer to rebut the *prima facie* case, by articulating a legitimate, nondiscriminatory reason for its employment decision. Defendant puts forth the same legitimate, non-discriminatory reason that it put forth for Plaintiffs' gender and pregnancy discrimination claims: Ms. Anderson was the sole person who filled the position of Office Manager at the Atlanta Branch, and as such, her position was unique. Therefore,

---

**22.** The Court notes that Defendants have not advanced any evidence as to the job duties or responsibilities of an armored car driver in order to allow the Court to assess its similarity, or dissimilarity, to Ms. Anderson's Office Manager position. However, given Plaintiff's concession that the driver position she was offered had less pay and benefits, [Doc. 36–12], the Court finds that that position, and thus Vaughn's position, is not similar to Plaintiff's Office Manager position.

after five months of medical leave and after exhausting her FMLA leave, Dunbar Armored advised Ms. Anderson that it could no longer hold the position for her. [Doc. 26 at 10 n. 3; Doc. 26–2 at 3]. As previously discussed, this reason is sufficient to meet Defendants' burden.

### c. Pretext

Ms. Anderson puts forth the same pretext argument for her racial discrimination claims as she asserted for her pregnancy and gender discrimination claims. For the same reasons discussed in connection with those claims, Ms. Anderson has not shown that Defendants' reasons for replacing her were pretextual for unlawful discrimination.

Accordingly, the Court **RECOMMENDS** that Defendants' motion for summary judgment me **GRANTED** on Ms. Anderson's racial discrimination claims.

### 5. Hostile Work Environment

 In their amended complaint, Plaintiffs allege that Ms. Anderson was subjected to "unlawful harassment in the workplace," Amended Complaint, Count

Three, which the Court interprets as a hostile work environment claim.[23,24]

### a. Prima Facie Case

Ms. Anderson alleges that Dunbar Armored condoned several acts committed by Johnson "that comprised a pattern of intentional harassment against and intimidation" of her. Amended Complaint at ¶ 71. She further alleges that this harassment began prior to, and continued after, she became pregnant, and that Defendant Dunbar allowed this harassment to continue. *Id.* at ¶¶ 72–73.

Defendants argues that Ms. Anderson alleges that she suffered "some sort of generalized, non-specific harassment," but does not allege that any alleged harassment was based on Ms. Anderson's gender or race. [Doc. 24–2 at 19–20]. Defendants also argues that Ms. Anderson has not alleged that any harassing conduct on the part of Defendants was severe and pervasive. [*Id.* at 21–22].

Ms. Anderson responds that she was subjected to years of harassment and intimidation by Defendant Johnson which

23. To the extent that Ms. Anderson seeks to recover for a hostile work environment based on gender and pregnancy discrimination under § 1981, Defendants are entitled to summary judgment on this claim as § 1981 only applies to harassment claims based on race. *See Remke v. Jones Lang LaSalle Americas, Inc.*, No. 1:07–CV–2539–TWT–JFK, 2008 WL 4544469, *1 n. 1 (N.D.Ga. Oct. 9, 2008) (adopting R & R) (Any claim for sex discrimination brought pursuant to § 1981 must fail "because § 1981 provides rights and remedies only with respect to racial discrimination.") (citing *Givens*, 548 F.Supp.2d at 1269). Therefore, to the extent the claim is raised, the undersigned **RECOMMENDS** that summary judgment be **GRANTED** on Ms. Anderson's § 1981 hostile work environment based on gender and pregnancy discrimination.

24. Ms. Anderson also complains of "intentional harassment." Amended Complaint,

Count Three. The Court concludes that this allegation is duplicative of her disparate treatment, gender discrimination, and hostile work environment claims as Title VII and § 1981 assume intentional discrimination. *See Leslie v. United Technologies Corp.*, 51 F.Supp.2d 1332, 1346 (S.D.Fla.1998) ("Section 1981 covers claims for intentional racial discrimination in 'the making, performance, modification, and termination of [employment] contracts.'") (internal citations omitted); *see also EEOC v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1570 (11th Cir.1993) ("The Court held that Congress did not intend such an anomalous result and thus, a Title VII plaintiff could prevail if she could prove ... intent to discriminate."). Accordingly, the Court **RECOMMENDS** that Ms. Anderson's intentional harassment claim be **DISMISSED** as **MOOT.**

began before, and continued after, her pregnancy. [Doc. 25 at 15]. She also responds that under FED. R. CIV. P. 8, she has given proper notice of her harassment claims to Defendants despite their lack of specific incidents of harassment in the Amended Complaint. [*Id.*]. Finally, she contends that Johnson's harassment and intimidation caused a "dire adverse effect" upon her mental and emotional health, which caused her to seek psychological treatment and be deemed physically incapacitated during her pregnancy. [*Id.* at 15–16].

Defendants reply that it makes "no sense" for Johnson to give preferential treatment to some African–Americans, but not Ms. Anderson. [Doc. 26 at 11]. Defendants also reply that Plaintiffs are unable to identify "even one single specific act of harassment by Defendant Johnson, let alone offer any evidence that it was motivated by race." [*Id.* at 11–12].

In response to the Court's June 2, 2009, Order, Ms. Anderson asserts that Count Three "is no longer included as a cause if action in this matter" because it was removed from the Second Amended Complaint. As a result, it appears that Ms. Anderson has abandoned this claim because she has not ultimately offered any rebuttals to Defendant's arguments. *Thomas v. Bed Bath & Beyond, Inc.*, 508 F.Supp.2d 1264, 1285 (N.D.Ga.2007) (explaining that when a party fails to address a claim at summary judgment, the claim has been abandoned) (citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995)).

However, because Plaintiffs initially argued that their pleadings were sufficient, and the undersigned recommends that Plaintiffs' Second Amended Complaint (which excludes the hostile work environment claims) be stricken from the record, in an abundance of caution, the Court addresses other relevant considerations concerning the merits of Defendants' arguments on these claims.

First, the Court concludes that, if Ms. Anderson has not abandoned her hostile work environment claims, Defendants are not entitled to summary judgment. As noted previously, under Rule 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. "[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548 (internal quotations omitted). If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to show the existence of a genuine issue of fact. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1116 (11th Cir.1993); *see also Burger King Corp.*, 572 F.3d at 1312–13. However, Defendants have only argued that Plaintiffs' allegations are incorrectly or inadequately pleaded. As the Former Fifth Circuit explained:

> A motion for summary judgment, as distinguished from a motion to dismiss for failure to state a claim, seeks to "pierce the allegations in the pleadings," 10 C. Wright & A. Miller, Federal Practice and Procedure § 2712 at 373 (1973); it goes beyond the pleadings and challenges the factual existence of a valid claim. Summary judgment should be granted only when it is clear factually what the truth of the matter is. *Poller v. Columbia Broadcasting System,* [368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458

(1962) ]. The facts may become clear when, for example, the parties stipulate them, or when the moving party files an affidavit setting forth certain facts, and the non-moving party is unable to produce any controverting affidavit or evidence. FED. R. CIV. P. 56(e). *Tuley v. Heyd,* 482 F.2d 590, 593 (5th Cir.1973).

Therefore, regardless how inadequate Ms. Anderson's pleadings are, Defendants have not satisfied their summary judgment burden by showing the absence of a genuine issue of material *fact. Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.1991). Therefore, if the claims have not been abandoned, the undersigned **RECOMMENDS** that Defendants' converted motion for summary judgment on Ms. Anderson's hostile work environment claims be **DENIED.**

Second, in the event the District Court disagrees with this analysis, the undersigned proceeds to determine if the evidence in the record demonstrates a genuine issue of material fact . on Ms. Anderson's hostile work environment claims. The Court concludes it does not.

■ To establish a *prima facie* case for a hostile work environment claim based on race or gender discrimination, a plaintiff must show:

(1) that [s]he belongs to a protected group, (2) that [s]he was subjected to unwelcome racial [or gender] harassment, (3) that the harassment was based on [her] race [gender], (4) that the harassment "was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment," and (5) [that there is] a basis for holding [Defendant] liable.

*Ferguson v. Ga. Dept. of Corrs.,* 428 F.Supp.2d 1339, 1357 (M.D.Ga.2006) (quoting *Watson v. Blue Circle, Inc.,* 324 F.3d 1252, 1257 (11th Cir.2003)).

■ Ms. Anderson has not demonstrated a *prima facie* case for these claims. First, she has come forward with no specifics facts, nor alleged any facts, which would show that any alleged harassment by Johnson was based on her race, gender generally or pregnancy. Instead, she conclusorily asserts in the amended complaint that:

¶ 71

Defendant **DUNBAR ARMORED, INC.,** through the actions of its agents/employees, Defendants **HARRY KOCOPI, ASHLEY R. MEW,** and **HORACE JOHNSON** intentionally and/or recklessly discriminated against Plaintiff **SHARON ANDERSON** because Defendant **DUNBAR ARMORED, INC.,** allowed, facilitated and condoned various acts that were committed by Defendant **HORACE JOHNSON** that comprised a pattern of intentional harassment against and intimidation of Plaintiff **SHARON ANDERSON** during the course of her employment with Defendant **DUNBAR ARMORED, INC.**

¶ 72

The acts of harassment and retaliation by Defendant **HORACE JOHNSON** against Plaintiff **SHARON ANDERSON** began prior to and continued after Plaintiff **SHARON ANDERSON** became pregnant.

Amended Complaint at ¶¶ 71–72. Such allegations of harassment are conclusory at best and insufficient to withstand summary judgment. *See Pierri v. Cingular Wireless, LLC,* 397 F.Supp.2d 1364, 1378–79 (N.D.Ga.2005) (holding third prong of hostile work environment not established because "Plaintiff has no evidence beyond her subjective belief that her work-related reprimand and the rejection of her expense reports were motivated by gender animus."). Even assuming that Ms. Anderson was correct that her amended

complaint placed Defendant on notice,[25] at the present stage of the case the Court must "consider all evidence in the record when reviewing a motion for summary judgment—pleadings, depositions, interrogatories, affidavits, etc.—and can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists." *Akins v. Fulton County, Ga.*, 278 Fed.Appx. 964, 967 (11th Cir.2008) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986) (internal quotation marks omitted)).

▇▇▇ The only evidence in the record of any specific conduct worthy of any analysis on this issue is Johnson's memorandum to Ms. Anderson in March 2007 about her work performance. However, in order to constitute actionable harassment, the offending conduct must be "because of" or "on account of" the employee's protected characteristic. No objective consideration of Johnson's memorandum allows such a construction.

▇▇▇ Second, Ms. Anderson's general allegations do not demonstrate the level of severity and pervasiveness required under the law to be a hostile work environment. In determining if the environment is abusive, the Court looks at the totality of the circumstances, including the frequency of the discriminatory conduct, the severity of the conduct, whether it is physically threatening or humiliating, or involves only offensive utterances, and whether the comments or acts unreasonably interfere with the employee's work performance. *McCann*, 526 F.3d at 1378 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), and *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Here, Plaintiff has not produced any evidence of any specific conduct on the part of Johnson which would show any severe or pervasive conduct. There is no evidence in the record to show that Johnson ever threatened or made any sort of disparaging remarks to Ms. Anderson. *See Walton v. Johnson & Johnson Services, Inc.*, 347 F.3d 1272, 1285 (11th Cir. 2003) ("Generally speaking, isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'") (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)); *Ellis v. Wal–Mart Stores, Inc.*, 952 F.Supp. 1522, 1527 (M.D.Ala.1996) ("The plaintiff has failed to point specifically to any evidence in the record which could support her claim, and thus, failed to carry her burden of production.").

Moreover, to the extent that Ms. Anderson alleges any harassing conduct

---

**25.** *But see Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), where the supreme Court, in discussing the pleading requirements of FED. R. CIV. P. 8(a), stated:

As the Court held in [*Bell Atlantic Corp. v.*] *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*,] 550 U.S. at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556, 127 S.Ct. 1955.

on the part of Johnson, said conduct falls well short of the level of severe and pervasive conduct required to alter the terms and conditions of her employment. Although she alleges that Johnson committed "various" harassing acts, she has not come forward with any evidence to show that any acts occurred with any sort of regularity or were "more than a few isolated incidents of harassment." *See Ellis,* 952 F.Supp. at 1527 ("It is well established that isolated and sporadic incidents of harassment are insufficient to create a hostile working environment."). Additionally, she has not pointed to any specific evidence to show that Johnson's conduct was physically threatening or humiliating.[26] Nor has Ms. Anderson pointed to evidence showing that Johnson's conduct unreasonably interfered with her job performance. *See* note 26 *supra.* For instance, other than being placed on medical leave for her pregnancy complications, there is no evidence in the record that Ms. Anderson could not perform her job or missed any work due to any harassing conduct. As such, her hostile work environment claim is not viable as a matter of law. *See Mendoza v. Borden,* 195 F.3d 1238, 1248 (11th Cir.1999) (finding hostile work environment claim not actionable where "three of the four factors—physically threatening or humiliating conduct, interference with job performance, and severity—are clearly absent from the conduct established by" plaintiff).

Accordingly, the Court **RECOMMENDS** that summary judgment be **GRANTED** on Ms. Anderson's hostile work environment claims.[27]

26. To the extent Ms. Anderson's argues that Johnson's conduct caused physical problems in her pregnancy, Amended Complaint at ¶ 73, the evidence does not support this assertion. The evidence shows that Ms. Anderson's pregnancy complications were related to "stress of work during pregnancy causing problems." [Doc. 22–2 at 14]. The health care provider's certification shows that Ms. Anderson's incapacity would last until after delivery and her six week postpartum check-up; if it was Johnson's harassment that was stressing her, her inability to work likely would not have been tied to the postpartum examination. Nothing in evidence states, or even suggests, that any harassing conduct was the cause of Ms. Anderson's work stress. Instead, the only evidence in the record of Ms. Anderson's stress at work was her complaint in January 2006 to Johnson and Mike Pate that she was "overwhelmed" by the demands of her job as Office Manager. [*See* Doc. 26–2 at 5–6].

27. Although Count Three of Plaintiffs' Amended Complaint alleges "harassment," [Doc. 15 at 25–27], it does not appear that Ms. Anderson is raising a retaliatory harassment claim. The Eleventh Circuit has not explicitly recognized that a retaliatory harassment claim is a viable claim under Title VII. *See, e.g., Philip L. Tucker v. Benteler Automotive Alabama, Inc.,* Civil Action No. 3:07cv298–WHA, 2009 WL 531875, *13 (M.D.Ala. Mar. 3, 2009); *Hewlett v. Waffle House, Inc.,* No. 3:04–cv–111, 2006 WL 1582423, *7 n. 21 (M.D.Ga. June 5, 2006); *Grier v. Snow,* No. 1:04–cv–397, 2006 WL 5440387, *2 (N.D.Ga. Mar. 15, 2006) (Camp, J.). Indeed, the Eleventh Circuit noted in an unpublished opinion that "there are threshold questions whether a plaintiff can even bring a 'retaliatory harassment claim.'" *Andrews–Willmann v. Paulson,* 287 Fed.Appx. 741, 746 n. 4 (11th Cir. 2008). As a result, there is little guidance as to how to evaluate such a claim.

However, in *Grier v. Snow,* 206 Fed.Appx. 866 (11th Cir.2006), the Eleventh Circuit suggested that such a claim would be evaluated under the *McDonnell Douglas* burden shifting framework. In *Grier,* the plaintiff appealed the district court's grant of summary judgment on her retaliatory harassment claim. *Grier,* 206 Fed.Appx. at 867. The Eleventh Circuit then analyzed the case by determining whether Plaintiff could make a *prima facie* case of retaliation under Title VII, assuming for the purposes of the case that Plaintiff met the adverse employment action element. *Id.* at 868. Thus, it appears that a retaliatory harassment claim in the Eleventh Circuit should be analyzed under the *McDonnell Douglas* framework. *See also Andrews–Willmann,* 287 Fed.Appx. at 747 (finding that

### 6. Retaliation

 Under the anti-retaliation clause of Title VII, it is an unlawful employment practice for an employer to, *inter alia,* discriminate against an employee "[ (1) ] because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or [ (2) ] because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). These two prohibitions on retaliation are generally known as the opposition clause and the participation clause, respectively. *E.E.O.C. v. Total Sys. Servs., Inc.,* 221 F.3d 1171, 1174 (11th Cir.2000). In determining whether an employer has retaliated against an employee for engaging in protected activity, the Court analyzes the claim using the burden-shifting framework for disparate treatment claims. *Adams v. Cobb County School Dist.,* 242 Fed.Appx. 616, 620 (11th Cir.2007); *see also Johnson v. Booker T. Washington Broad. Serv., Inc.,* 234 F.3d 501, 511 n. 10 (11th Cir. 2000) (*McDonnell Douglas* burden-shifting framework applies to retaliation claims as well); *McDaniel v. Fulton County Sch. Dist.,* 233 F.Supp.2d 1364, 1384 (N.D.Ga. 2002).

 The United States Supreme Court recently held that § 1981 encom-

plaintiff could not establish a *prima facie* case of retaliatory harassment because plaintiff could not establish the causation element). District courts in the Eleventh Circuit have also used the *McDonnell Douglas* framework in evaluating retaliatory harassment claims. *See, e.g., Bozeman v. Per–Se Techs., Inc.,* 456 F.Supp.2d 1282, 1344 & n. 49 (N.D.Ga.2006); *Perryman v. West,* 949 F.Supp. 815, 819–21 (M.D.Ala.1996). The undersigned therefore uses this framework in evaluating the retaliatory harassment claim.

In any event, if such a claim is recognized, the harassment, must be sufficiently severe and pervasive to alter a term or condition of employment. *Perryman,* 949 F.Supp. at 820.

passes retaliation claims but the elements of such a claim are not yet settled. *See CBOCS West, Inc. v. Humphries,* 553 U.S. 442, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008) (holding that § 1981 encompasses claims of retaliation without discussing the elements of such claims). However, in an opinion issued prior to *Humphries,* the Eleventh Circuit held that the elements of retaliation claims under Title VII and § 1981 are the same. *Goldsmith v. Bagby Elevator Co., Inc.,* 513 F.3d 1261, 1277 (11th Cir.2008). Therefore, the Court applies the same framework to Ms. Anderson's retaliation claims, whether brought under Title VII or § 1981.[28]

#### a. Prima Facie Case

Ms. Anderson alleges that Dunbar Armored retaliated against her by refusing to allow her to return to her position of Office Manager because of her extended medical leave due to her pregnancy complications and for making complaints about harassment. Amended Complaint at Count Four, ¶¶ 76–77. Defendants argue that her retaliation claim is without merit because she has failed to set forth any facts to show that she complained of discrimination based on race or that she participated in any investigation concerning an allegation of race discrimination prior to her alleged termination. [Doc. 24–2 at 25].

For the same reasons stated in addressing Ms. Anderson's hostile work environment claims, the record is void of any evidence of severe or pervasive harassment. Therefore to the extent that Ms. Anderson asserts a retaliatory harassment claim, the undersigned **RECOMMENDS** that summary judgment be **GRANTED** against her on this claim.

28. Nonetheless, for the reasons stated earlier on this R & R, § 1981 applies only to race discrimination and retaliation. To the extent Ms. Anderson seeks recovery under § 1981 for retaliation for opposing gender discrimination, the Court **RECOMMENDS** that any such claim be **DISMISSED.**

Plaintiffs respond that they have stated a viable claim because Ms. Anderson "engaged in statutorily protected activities," which included complaining to Defendant Dunbar Armored's senior management about Defendant Johnson's harassment and intimidation. [Doc. 25 at 17–18]. Plaintiffs also respond that Ms. Anderson sustained an adverse employment action because she had to take an extended medical leave due to Defendant Johnson's intimidation and was not allowed to return to her position as Office Manager. [*Id.* at 18].

Defendants reply that no evidence in this case exists to show that Ms. Anderson ever complained about any alleged discrimination by Johnson. [Doc. 26 at 12]. Defendants further reply that Ms. Anderson's generalized complaints do not state a claim for retaliation, and that Ms. Anderson's one documented complaint concerned her workload and not any alleged discrimination. [*Id.* at 13].

In response to the Court's June 2, 2009, order, Plaintiffs' respond that even if Defendants were unaware of Plaintiffs' complaints of a hostile work environment, their contentions are "undone by the medical documentation that was provided by Plaintiff Sharon's treating physicians in this matter," and that Ms. Anderson was termi-

nated only after she attempted to return to work after being released by her treating physicians. [Doc. 36 at 13–14].

Defendants reply that Plaintiffs have failed to produce any evidence to show that Ms. Anderson actually complained about discrimination. [Doc. 39 at 10].

■ To establish a *prima facie* case of Title VII retaliation, a plaintiff must show that (1) she engaged in statutorily protected expression; (2) the employer took a materially adverse action against her;[29] and (3) some causal relationship existed between the two events. *Crawford,* 529 F.3d at 972–73; *Pennington v. City of Huntsville,* 261 F.3d 1262, 1266 (11th Cir. 2001). The employer then must rebut the plaintiff's *prima facie* case, by producing a legitimate, non-discriminatory reason for its action. *Cooper,* 390 F.3d at 725.

Defendants implicitly concede that Ms. Anderson satisfies the second and third requirements of a *prima facie* case. [Doc. 24–2 at 24–26 (arguing that Ms. Anderson never complained about any sort of discrimination prior to her termination)]. Therefore, the Court will only examine the first element of the *prima facie* case.

### Engaged in Protected Activity

■ In order to engage in protected activity, the underlying act complained of

29. In *Crawford v. Carroll,* 529 F.3d 961, 972–73 (11th Cir.2008), the Eleventh Circuit recognized that the Supreme Court's decision in *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), broadened the type of employer conduct considered actionable in a retaliation claim, from that which adversely affects the plaintiff's conditions of employment or employment status to that which has a materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related. *Crawford,* 529 F.3d at 973. Therefore, as result of *Burlington Northern* and *Crawford,* the Court concludes that it is inappropriate to refer to this element as the "adverse employment action" element. *Bur-*

*lington Northern* explicitly states that "[t]he scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). The Court's decision merely requires the employee to show that a reasonable employee would have found the challenged action materially adverse, meaning the reasonable worker would be dissuaded from making or supporting a charge of discrimination. *Id.* at 68, 126 S.Ct. 2405 (quotation marks and citations omitted). Thus, it more is appropriate to refer to the "adverse employment action" element as the "materially adverse action" element.

need not, in fact, violate Title VII. Rather, the employee merely needs to have a reasonable belief that the employer has engaged in unlawful employment practices. *Webb v. R & B Holding Co., Inc.*, 992 F.Supp. 1382, 1389 (S.D.Fla.1998). However, the employee must, at the very least, communicate her belief that discrimination is occurring to the employer. It is not enough for the employee merely to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred. *Id.* (citing *Jurado v. Eleven–Fifty Corp.*, 813 F.2d 1406, 1411 (9th Cir. 1987) (affirming grant of summary judgment and observing that Plaintiff had "not shown that he ever opposed the [policy] as discriminatory before he was fired. He merely opposed the [policy] for personal reasons")). Moreover, the Eleventh Circuit has emphasized that "a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that [s]he subjectively (that is, in good faith) believed that [her] employer was engaged in unlawful employment practices, but also that [her] belief was objectively reasonable in light of the facts and record presented." *Little v. United Techs.*, 103 F.3d 956, 960 (11th Cir.1997).

The Court concludes that Ms. Anderson did not engage in any statutorily protected expression. She generally argues that she complained to senior management at Dunbar Armored about Johnson's harassing conduct. [Doc. 25 at 17]. However, these conclusory allegations are insufficient to withstand summary judgment. *Leigh,* 212 F.3d at 1217("(C)onclusory allegations without specific supporting facts have no probative value."). In addition, there is no evidence anywhere in the record to show that Ms. Anderson actually made any complaints to management regarding any discriminatory treatment towards her by Johnson. The **only** evidence in the record of any complaint by Ms. Anderson is the memorandum to Johnson and Pate in January 2006 in which she asks for assistance in performing her job. [*See* Doc. 26–2 at 5–6]. This memorandum contains no statement which could be construed to either subjectively or objectively relate to discriminatory harassment or conduct by any person on a ground prohibited by federal law. In fact, the complaint in question was actually addressed to Johnson and requested that he keep it confidential. [*Id.* at 6]. Thus, Ms. Anderson did not engage in any protected activity. *See Brown v. City of Opelika,* 211 Fed.Appx. 862, 864 (11th Cir.2006) (finding that plaintiff had not engaged in any protected activity because she never complained about racial discrimination or harassment); *see also Murphy v. City of Aventura,* 616 F.Supp.2d. 1267, 1280–81 (S.D.Fla.2009) (finding that complaints such as telling supervisor that his behavior was inappropriate and asking him to please not use "that language" with her was not sufficient to notify employer that plaintiff believed that supervisor was harassing her); *Cordero v. Florida,* No. 4:06cv529–SPM/AK, 2007 WL 2972988, *5 (N.D.Fla. Oct. 9, 2007) (finding that plaintiff's general complaints were not sufficient to put his employer on notice that he believed his supervisor was discriminating against him due to his disability); *see also Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 262 (1st Cir.1999) (finding that plaintiff never alleged in his complaints that the conduct at issue violated Title VII or any other law and thus could not be considered protected activity).

Ms. Anderson also argues that the medical documentation submitted by her treating physician put Defendants on notice that Ms. Anderson had complained to them of a hostile work environment. [Doc. 36 at 13–14]. These records do no such thing. For example, the "Employer Notification"

**1324**

completed by Ms. Anderson's treating physician placing her on medical leave from April 16, 2007, for an indefinite period of time, merely states that she was disabled because "stress of work during pregnancy causing problems." [Docs. 35–15, 35–16]. These documents do not reflect that Plaintiff complained of any discriminatory treatment while she was at work.

■ Finally, it is not completely clear but it seems that Ms. Anderson argues that her FMLA leave and her extended pregnancy leave constituted protected expression. [*See* Doc. 36 at 13 ("It is undisputed that Plaintiff Sharon undertook a pregnancy-related leave of absence, a statutorily protected act pursuant to the FMLA and the Pregnancy Act.")]. First, to the extent that Ms. Anderson is raising an FMLA retaliation claim in her reply to Defendants' converted motion for summary judgment, she cannot raise this claim for the first time in her summary judgment filings. *See Hurlbert v. St. Mary's Health Care Sys., Inc.,* 439 F.3d 1286, 1297 (11th Cir.2006) (requiring plaintiff to amend the complaint before raising a claim at summary judgment); *Gilmour v. Gates, McDonald and Co.,* 382 F.3d 1312, 1315 (11th Cir.2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); *Klauber v. City of Sarasota,* 235 F.Supp.2d 1263, 1268–69 (M.D.Fla.2002) (granting summary judgment on a claim that was not raised in the complaint and instead was raised for the first time in a response to summary judgment).

Second, even if the Court construes Count Four of the Amended Complaint to allege that Ms. Anderson was retaliated against for taking pregnancy leave, such claim fails. As the Eleventh Circuit recently held in an unpublished decision:

Title VII's retaliation provision makes it unlawful "to discriminate against any individual ... because [s]he has opposed any practice made an unlawful employment practice by" the Act. 42 U.S.C. § 2000e–3(a). It is unlawful under the Act to discriminate on the basis of pregnancy. *See* 42 U.S.C. § 2000e-(k). Thus, to sustain a retaliation claim, [plaintiff] had to prove that [defendant] discriminated against her because she opposed the discriminatory treatment of her pregnancy....

The Supreme Court has held that the term "oppose" in this context takes its ordinary meaning: "to resist or antagonize ...; to contend against; to confront; resist; withstand." *Crawford v. Metropolitan Government of Nashville and Davidson County, Tenn.,* —— U.S. ——, 129 S.Ct. 846, 850, 172 L.Ed.2d 650 (2009). In *Crawford,* an employee engaged in protected activity where she disclosed discrimination not on her own initiative, but in response to an internal investigation. *Id.*

Even after *Crawford,* to engage in protected activity, the employee must still, "at the very least, communicate her belief that discrimination is occurring to the employer," and cannot rely on the employer to "infer that discrimination has occurred." *Webb v. R & B Holding Co., Inc.,* 992 F.Supp. 1382, 1390 (S.D.Fla.1998). A simple request for maternity leave would not suffice, because it alone would not announce opposition to the discriminatory basis for its denial. *See McCormick v. Allegheny Valley Sch.,* [Civil Action No. 06–3332,] 2008 WL 355617, *17 (E.D. Pa. [Feb. 6,] 2008).

*Demers v. Adams Homes of Northwest Florida, Inc.,* 321 Fed.Appx. 847, 852 (11th Cir.2009).

■ Therefore, Ms. Anderson does not state a retaliation claim under Title VII, as amended by the PDA, simply because she took extended pregnancy leave and her

position thereafter was filled, because her taking pregnancy leave does not announce opposition to any arguably discriminatory act.

Accordingly, the Court **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** on Plaintiffs' retaliation claim. In the event the District Court disagrees with this analysis, the undersigned addresses Defendants' legitimate nondiscriminatory reason.

### b. Legitimate, Non-Discriminatory Reason

■ Defendants again puts forth the same legitimate, non-discriminatory reason that they put forth for Plaintiffs' sex and racial discrimination claims: Ms. Anderson was the sole person who filled the position of Office Manager at the Atlanta Branch, and as such, her position was unique. Therefore, after five months, Defendant Dunbar Armored advised Ms. Anderson that it could no longer hold the position for her. [Doc. 26 at 10 n. 3; Doc. 26–2 at 3]. As previously discussed, this reason is sufficient to meet Defendants' burden.

### c. Pretext

■ Although not specifically argued by Ms. Anderson, she appears to argue pretext based on the same arguments made with regard to her *prima facie* case. While it is true that to establish pretext, a "plaintiff is not required to introduce evidence beyond that already offered to establish the *prima facie* case," *Hairston v. Gainesville Sun Pub'g Co.*, 9 F.3d 913, 921 (11th Cir.1993) (quoting *Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 732 (9th Cir.1986)), the evidence put forth by Ms. Anderson does not create a genuine issue of material fact as to whether she was impermissibly retaliated against. As discussed above, her allegations are conclusory and insufficient to withstand summary judgment. Additionally, Ms. Anderson never put Defendants on notice

that any conduct by Defendants was discriminatory. As a result, she cannot establish pretext on her retaliation claims.

Accordingly, the Court **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** on Ms. Anderson's retaliation claims.

### 7. Fourteenth Amendment Equal Protection

Ms. Anderson alleges that Defendants violated her "right to work" in violation of the equal protection of law afforded under the Fourteenth Amendment when she was "subjected to acts of intentional harassment and intimidation." Amended Complaint at ¶ 79. She also argues that Defendants violated her equal protection rights because they failed to investigate her numerous complaints of harassment and intimidation and "engaged in a pattern of actions" that prevented Ms. Anderson from exercising her rights to be free of illegal discrimination. *Id.* at ¶ 80.

Defendants argue that she cannot state a claim under the Equal Protection Clause of the Fourteenth Amendment because the Fourteenth Amendment does not apply to private parties, such as Dunbar Armored and the individually named Defendants. [Doc. 24–2 at 27–28].

In response to the Court's June 2, 2009, order, Plaintiffs respond that they are no longer pursing this claim since it was removed from their second amended complaint. [Doc. 36 at 14]. Accordingly, the Court **RECOMMENDS** that summary judgment be **GRANTED** on Plaintiffs' Fourteenth Amendment Equal protection claims. However, because the undersigned **RECOMMENDS** that Plaintiffs' Second Amended Complaint be stricken, and in the event Plaintiffs did not intend to abandon their equal protection claim, the undersigned addresses the merits of this claim.

The Fourteenth Amendment provides, in relevant part, that:

No *State* shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any *State* deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST., AMEND. Xiv (emphasis added). Thus, "[t]he Fourteenth Amendment acts as a shield against only the government." *Campbell v. United States,* 962 F.2d 1579, 1582 (11th Cir.1992) (citing *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948)). The 89 Constitution does not affect the relations between private parties, "however discriminatory or wrongful," unless the private party has engaged in state action. *Id.*

 The Court concludes that Defendants are entitled to summary judgment on Ms. Anderson's Fourteenth Amendment Equal Protection claims. Here, there is no state action involved in the claims raised by her. As correctly pointed out by Defendants, the individual Defendants are private citizens, and not alleged to be state actors. Thus, they cannot be sued under the Fourteenth Amendment. *See Jones v. Pilgrim,* No. CIVA 06–00057, 2006 WL 1452700, *2 (S.D.Ala. May 24, 2006) ("[T]he Fourteenth Amendment prohibits government action that deprives an individual of life, liberty, property without due process of law ... These provisions protect against proscribed governmental conduct, and not the conduct of a private citizen. Inasmuch as Defendant is not alleged to be an employee of the government, Plaintiff does not state a claim against Defendant under the Fourth, Eighth, Thirteenth, Fourteenth, or Nineteenth Amendments."); *Smartt v. First Union Nat'l Bank,* 245 F.Supp.2d 1229, 1233 (M.D.Fla.2003) ("Constitutional violations do not apply to private citizens or corporations unless they act under color of law.").

Likewise, Plaintiffs' have not alleged that Dunbar Armored was engaged in state action at the time Ms. Anderson was allegedly harassed, and therefore, have failed to state a claim under the Equal Protection Clause of the Fourteenth Amendment. *See Burrows v. Waffle House, Inc.,* No. 99–7053–CIV, 2000 WL 35593211, *7 (S.D.Fla. Aug. 28, 2000) ("Plaintiff is also unable to rely upon the equal protection clause of the Fourteenth Amendment since Waffle House and Northlake are private companies, and therefore no state action is involved.") (citing *Campbell,* 962 F.2d at 1582); *Stoutt v. Southern Bell Tel. & Tel. Co.,* 598 F.Supp. 1000, 1002 (S.D.Fla.1984) (same).

Accordingly, the undersigned **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** on Ms. Anderson's Fourteenth Amendment Equal protection claims.

### 8. *18 U.S.C. §§ 241 and 242*

Ms. Anderson alleges that Defendants conspired to prevent her from exercising her right to be free from workplace harassment and for exercising her right to take medical leave in violation of 18 U.S.C. § 241. Amended Complaint at ¶¶ 83–85. Similarly, she alleges that Defendants prevented her from having a workplace free of harassment and intimidation and refusing to allow her to resume her position of Office Manager following her maternity leave in violation of 18 U.S.C. § 242. Amended Complaint at ¶¶ 87–8.

Defendants argue that they are entitled to summary judgment because §§ 241 and 242 provide no basis for civil liability. [Doc. 24–2 at 28].

 In response to the Court's June 2, 2009, order, Ms. Anderson responds that

she is no longer pursing these claims since they were removed from the Second Amended complaint. [Doc. 36 at 14]. Therefore, the Court concludes that she has abandoned these claims, which entitles to Defendants to summary judgment. Even if the claims should be addressed on their merits because the Court has recommended that the Second Amended Complaint be stricken, Defendants still are entitled to summary judgment on these claims. Sections 241 and 242 are criminal statutes, and they do not provide a private right of action. *See Payne v. Allen*, No. 2:08–cv–296, 2008 WL 2326327, *2 (M.D.Ala. June 3, 2008); *see also Gipson v. Callahan*, 18 F.Supp.2d 662, 668 (W.D.Tex. 1997) ("Title 18 U.S.C. § 242 makes it a crime to willfully deprive persons under color of law of their rights under the Constitution or laws of the United States. The statute does not create a private cause of action."); *Risley v. Hawk*, 918 F.Supp. 18, 21 (D.D.C.1996) (§ 241; same); *Dugar v. Coughlin*, 613 F.Supp. 849, 852 n. 1 (S.D.N.Y.1985) ("Sections 241, 242 ... relate to deprivation of civil rights, however there is no private right of action under any of these statutes.").

Accordingly, the Court **RECOMMENDS** that summary judgment be **GRANTED** on Ms. Anderson's 18 U.S.C. §§ 241 and 242 claims.

### 9. State Law Claims

██ Defendants seeks summary judgment on Plaintiffs' state law claims of negligent retention and hire, (Counts Eight and Nine), intentional infliction of emotional distress, (Count Ten), negligent infliction of emotional distress, (Count Eleven), vicarious and/or imputed liability, (Count Twelve), loss of consortium, (Count Thirteen), and punitive damages under Georgia law, (Count Fourteen). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction" and dismiss the state claims as well. 28 U.S.C. § 1367(c)(3); *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir.1997).

██ District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. District courts have supplemental jurisdiction over all other claims, including state-law claims, that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction...." 28 U.S.C. § 1367(c). When deciding whether to exercise supplemental jurisdiction over a state-law claim, a district court should consider, among other factors, "judicial economy, convenience, fairness and comity." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir.2002) (noting "the argument for dismissing state law claims in order to allow state courts to resolve issues of state law is even stronger when the federal law claims have been dismissed prior to trial").

██ In this case, the state law claims are best left for the Georgia courts. Accordingly, if the District Court accepts the recommendation to grant summary judgment on Plaintiffs' federal claims, it is further **RECOMMENDED** that the Court **DECLINE** to exercise supplemental jurisdiction over their state claims. *Ingram v. Sch. Bd. of Miami–Dade County*, 167 Fed.

Appx. 107, 108 (11th Cir.2006). Alternatively, if the District Court decides to retain supplemental jurisdiction over the state law claims, the undersigned examines the merits below.

### a. Negligent Hiring and Retention

Ms. Anderson alleges that Dunbar Armored failed to exercise ordinary care in selecting its employees when it hired Johnson because he committed "various acts of harassment and intimidation" against Ms. Anderson. Amended Complaint at ¶¶ 91–92. She also alleges that Johnson harassed Ms. Anderson concerning her work performance at inappropriate times, such as midnight, and issued her several "unofficial" notices in an effort to "intimidate, harass and damage" Ms. Anderson's reputation, which Defendant Dunbar Armored knew about and did nothing to correct. *Id.* at ¶¶ 94–96. She further alleges that Johnson engaged in "acts of malice and intimidation" by refusing to allow Ms. Anderson to have requested time away from work for "family purposes." *Id.* at ¶ 39. Ms. Anderson alleges that Dunbar Armored was on notice of Johnson's harassing conduct through receipt of the unofficial notices and "negligently, recklessly, and/or intentionally" allowed Johnson to remain employed with Dunbar Armored. *Id.* at ¶¶ 98–99. Finally, she claims that Dunbar Armored negligently hired and retained Kocopi, Mew and Johnson despite the facts that they engaged in intentional discriminatory employment practices by not allowing Ms. Anderson to return to her position of Office Manager despite allowing other employees to take extended absences ranging from four to six months and return to their positions. *Id.* at ¶¶ 101–02.

Defendants argue that Ms. Anderson's claims for negligent hire and retention must fail because negligent retention and hire claims are derivative claims and can only survive if the underlying claims survive. [Doc. 242 at 31, 33]. Defendants also argue that her negligent retention and hire claims must fail because she has set forth no facts to show that Defendant Dunbar Armored was aware that Johnson had a reputation for harassment at the time of his hire, that it was foreseeable that Johnson would harass Ms. Anderson, and that Johnson was nevertheless hired and retained anyway. [*Id.* at 32]. Finally, Defendants argue that any alleged discriminatory termination of Ms. Anderson must fail because Ms. Anderson was an at-will employee. [*Id.* at 33–34].

Ms. Anderson responds that despite Defendants' assertions to the contrary, they have alleged specific facts regarding her claims for negligent retention and hire in that Dunbar Armored was aware that Johnson engaged in acts harassment and intimidation and was on notice of the "arbitrary and discriminatory application" of its policies pertaining to its medical leaves of absence. [Doc. 18 at 19]. She also contends that she has pleaded a *prima facie* case for racial and pregnancy discrimination and negligent hire and retention of the individual Defendants. [*Id.* at 20].

Defendants reply that Plaintiff offered "no real substantive response" to their arguments. [Doc. 26 at 14].

In response to the Court's June 2, 2009, order, Plaintiffs further respond that contrary to Defendants assertions, they have "expressly alleged" that their claims are based upon the harassment and intimidation of Ms. Anderson rather than her termination. [Doc. 36–15].

Defendants reply that Ms. Anderson has not produced any evidence to show the reputation or alleged propensity of any of the individual Defendants for harassment. [Doc. 39 at 11]. Defendants further reply that negligent retention/hiring claims based on discrimination do not state a claim under Georgia law. [*Id.* at 12].

██ Under Georgia law, "a defendant employer has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's 'tendencies' or propensities that the employee could cause the type of harm sustained by the plaintiff." *Tomczyk v. Jocks & Jills Restaurants, LLC.*, 198 Fed. Appx. 804, 815 (11th Cir.2006) (citing *Munroe v. Universal Health Servs., Inc.*, 277 Ga. 861, 596 S.E.2d 604, 606 (2004)). A plaintiff states a claim for negligent hiring and retention if "the employer, in the exercise of reasonable care, should have known of an employee's reputation for [gender and racial] harassment and that it was foreseeable that the employee would engage in [gender and racial] harassment of a fellow employee but he was continued in his employment.'" *Orquiola v. National City Mortg. Co.*, 510 F.Supp.2d 1134, 1162 (N.D.Ga.2007) (citing *Coleman v. Housing Authority of Americus*, 191 Ga.App. 166, 170, 381 S.E.2d 303, 307 (1989)).

██ The Court concludes that Defendants are entitled to summary judgment on Ms. Anderson's negligent retention and hiring claims for three reasons. First, such claims are derivative and cannot survive without an underlying tort. *See MARTA v. Mosley*, 280 Ga.App. 486, 490, 634 S.E.2d 466, 469 (2006) ("A claim for negligent retention is necessarily derivative and can only survive summary judgment to the extent that the underlying substantive claims survive the same."). Here, the Court has recommended that Ms. Anderson's underlying claims be dismissed. Therefore, her negligent hire and retention claims also must fail. *See Morris v. Bouchard*, No. 1:06–CV–2535–GGB, 2007 WL 1100465, *9 (N.D.Ga. Apr. 7, 2007) ("Although Defendant has not yet had an opportunity to move for dismissal of this claim, given the Court's findings with respect to Plaintiff's claim of negligence *per se*, his negligent retention claim must also be dismissed for want of an underlying tort."); *Eckhardt v. Yerkes Regional Primate Center*, 254 Ga.App. 38, 38, 561 S.E.2d 164 (2002) ("As we found in Division 1, the appellants' claim for wrongful termination is without merit. Therefore, there is no underlying tort on which to base a negligent retention claim.").

Second, despite specifically being given an opportunity to do so by the Court, Ms. Anderson has failed to come forward with any evidence to show that Defendant Dunbar Armored "knew or had reason to know" that Johnson, or any of the individually named employees, were engaged in harassing behavior. Plaintiffs contend that Dunbar Armored had reason to know of Johnson's propensity due to receipt of various "unofficial notices" concerning Ms. Anderson, which were forwarded to the executive management at Dunbar Armored. Amended Complaint at ¶ 95. Such evidence is not sufficient to put Dunbar Armored on notice that Johnson had a reputation for harassment and intimidation. According to Plaintiffs' Amended Complaint, the "unofficial notices" sent to Dunbar Armored executive management concerned her work performance. *Id.* at ¶ 92. Because Johnson's "unofficial notices" to Ms. Anderson concerned her work performance, it is unclear to the Court how the notices could have in any way put Dunbar Armored on notice that Johnson was harassing Ms. Anderson in violation of the law. Moreover, as discussed above, there is no evidence in the record to show that Ms. Anderson made any complaints to Dunbar Armored regarding Johnson's alleged harassing treatment of her. *See Pierri*, 397 F.Supp.2d at 1384 ("Because the alleged harassing conduct toward Plaintiff is unrelated to the type of conduct complained of earlier, Defendant was not put on notice of Mr. Mur-

ray's alleged propensity for gender harassment."). Therefore, the Court concludes that no genuine issue of material fact exists as to Dunbar Armored's knowledge that Johnson was harassing Ms. Anderson.

Finally, to the extent that Ms. Anderson claims that her termination following her maternity leave is a proper basis for asserting a claim of negligent hiring and retention, this claim has no merit. Here, she does not allege that she was anything more than an employee-at-will. As such, any claim for negligent hiring and retention must fail. *See Farrell v. Time Service, Inc.,* 178 F.Supp.2d 1295, 1300 (N.D.Ga.2001) ("Moreover, an at-will employee cannot allege a claim for negligent hiring, retention or supervision based on an allegedly improper discharge."); *see also Dong v. Shepeard Community Blood Center,* 240 Ga.App. 137, 522 S.E.2d 720 (1999) (holding that a former employee cannot circumvent at-will doctrine by claiming negligent hiring).

Accordingly, the Court **RECOMMENDS** that summary judgment be **GRANTED** on Plaintiffs' negligent hire and retention claims.

### b. Intentional Infliction of Emotional Distress

Ms. Anderson alleges that Defendants intentionally discriminated against her with reckless disregard for the probability that their discriminatory conduct would, and did, cause emotional distress to her. Amended Complaint at ¶ 104. She also alleges that Defendants intended to cause her to suffer humiliation, mental anguish, and severe emotional and physical distress. *Id.* at ¶¶ 105–106.

Defendants argue that Ms. Anderson's claim is barred because she was an at-will employee. [Doc. 24–2 at 36–37]. They also argue the alleged conduct does not rise to the requisite level of outrageousness to state a valid claim for intentional infliction of emotional distress. [*Id.* at 37].

Ms. Anderson responds that the harassment and intimidation suffered by her during her employment with Dunbar Armored satisfies the elements of an intentional infliction of emotional distress claim. [Doc. 18 at 20]. She further responds that despite her pregnancy, the harassment and intimidation continued, so her treating physician removed her from work for the duration of her pregnancy. [*Id.* at 21]. Finally, she claims that her intentional infliction of emotional distress claim relates to her entire employment with Dunbar Armored, not as a result of her termination. [*Id.* at 21–22].

Defendants reply that Ms. Anderson again offered no substantive response to their arguments. [Doc. 26 at 14].

In response to the Court's June 2, 2009, order, Ms. Anderson argues that Defendants' reliance on her termination is misplaced. [Doc. 36 at 16]. She further argues that she experienced physical symptoms "pursuant to the documentation that was submitted by her physicians," which is evidence of Defendants' outrageous conduct towards her. [*Id.*].

Defendants reply that Ms. Anderson has failed to produce any evidence to establish a claim of severe emotional distress, and offer nothing besides their conclusory allegations. [Doc. 39 at 12–13].

 Under Georgia law, a claim for intentional infliction of emotional distress arises where an individual engages in extreme and outrageous conduct that intentionally or recklessly causes severe emotional distress. (*Yarbray v. S. Bell Tel. & Tel. Co.,* 261 Ga. 703, 706, 409 S.E.2d 835, 837–38 (1991)). Thus, to establish a claim for intentional infliction of emotional distress, a plaintiff must establish: "(1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the

emotional distress was severe." *Kirkland v. Tamplin*, 285 Ga.App. 241, 245, 645 S.E.2d 653, 657 (2007) (citation and internal quotation marks omitted). Defendants implicitly challenge Ms. Anderson's ability to establish the second element only, [Doc. 24–2 at 38–41], so the Court only addresses this element.

### Extreme and Outrageous Conduct

■ "Liability [for intentional infliction of emotional distress] has been found only where the defendant's conduct was 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Higdon v. Jackson*, 393 F.3d 1211, 1222 (11th Cir.2004) (quoting *Kaiser v. Tara Ford, Inc.*, 248 Ga.App. 481, 546 S.E.2d 861, 868 (2001)). In the employment context, Georgia courts note that a "major outrage in the ... conduct complained of is essential to the tort" of intentional infliction of emotional distress. *Metropolitan Atlanta Rapid Transit Auth. v. Mosley*, 280 Ga.App. 486, 491, 634 S.E.2d 466, 470 (2006). However, "[t]he existence of a special relationship between the actor and victim, such as that of employer to employee, may make otherwise non-egregious conduct outrageous." *Trimble v. Circuit City Stores, Inc.*, 220 Ga.App. 498, 499, 469 S.E.2d 776, 778 (1996).

The Court concludes that Defendants are entitled to summary judgment on Ms. Anderson's intentional infliction of emotional distress claim. First, she has failed to identify any actions or conduct on the part of Defendants which she considers extreme or outrageous. [*See* Amended

Complaint at Count Ten; Doc. 18 at 20–22; Doc. 36 at 16]. On summary judgment, the non-movant for issues that it bears the burden of proof at trial must either show that the record contains supporting evidence to withstand a directed verdict or provide additional evidence to withstand a directed verdict once the movant meets its summary judgment burden by showing an absence of a genuine issue of material fact. *See Fitzpatrick*, 2 F.3d at 1115–16. Defendants have met its summary judgment burden in this case. [*See* Doc. 24–2 at 38–41]. Ms. Anderson has not identified any evidence to show that Defendants' conduct was extreme and outrageous even though the Court specifically directed her to specifically produce all evidence which was pertinent to Defendants' motion. [*See* Doc. 27]. She failed to do so.[30] Thus, Defendants are entitled to summary judgment.

Second, to the extent that Ms. Anderson argues that Johnson's giving her "unofficial notices," "badgering" her about her work performance, and her termination are extreme and outrageous, the Court disagrees. Employment related activities by themselves are insufficient to establish that conduct is extreme and outrageous. *See Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1229 (11th Cir.1993) ("Georgia courts have held that an employer's termination of an employee-however stressful to the employee-generally is not extreme and outrageous conduct"); *Jarrard v. United Parcel Serv., Inc.*, 242 Ga.App. 58, 59–62, 529 S.E.2d 144, 147–49 (2000) (no intentional infliction of emotional distress claim where supervisor insisted on giving "sting-

**30.** Again, the Court is mindful that Ms. Anderson argues that much of the evidence that would support her claims is in the possession of the Defendants and has not been produced. [Doc. 36 at 6–9]. As previously stated, the Court presumes that Ms. Anderson would know the facts which support her claims and that she could have submitted her own sworn affidavit as evidence to the Court in order to oppose Defendants' motions. Evidently, Plaintiffs chose not to. This is particularly true in the intentional infliction of emotional distress context, which of necessity has some subjective components.

ing" performance evaluation to employee on day employee returned from a six week leave for psychiatric care even though employee cried and begged supervisor to stop the evaluation and where supervisor "smirked" at the employee and threatened him with termination, causing the employee to have a mental breakdown); *Mears v. Gulfstream Aerospace Corp.*, 225 Ga.App. 636, 639, 484 S.E.2d 659, 664 (1997) (Termination of employee after her short term disability benefits ran out and she was unable to return to work was not the type of outrageous conduct necessary to support claim for intentional infliction of emotional distress.); *Bowers v. Estep*, 204 Ga. App. 615, 420 S.E.2d 336, 337–39 (1992) (no intentional infliction of emotional distress claim where supervisor knew of the plaintiff's emotional conditions and "intentionally harassed, threatened, intimidated and belittled him and maliciously changed conditions of his job, causing him to take a leave of absence ... and be admitted to a psychiatric clinic."); *Fox v. Ravinia Club, Inc.*, 202 Ga.App. 260, 414 S.E.2d 243 (1991) (finding no outrageous conduct where plaintiff's supervisor spoke to her in a "hostile, intimidating and abusive manner" and gave her false reasons for termination); *see also Robinson v. United Parcel Service, Inc.*, No. 1:06–CV–2601–RLV, 2007 WL 3484743, *7 (N.D.Ga. Nov. 14, 2007) ("Negative performance evaluations, demanding business practices, and termination are recognized as common aspects of being employed."); *Pierri*, 397 F.Supp.2d at 1381–82 ("Georgia law does not consider adverse employment actions "extreme or outrageous."""). As a result, Ms. Anderson cannot establish that Defendants' conduct is extreme and outrageous.

Accordingly, the Court **RECOMMENDS** that summary judgment be **GRANTED** on Ms. Anderson's intentional infliction of emotional distress claims.

### c. Negligent Infliction of Emotional Distress

Ms. Anderson alleges that as a result of Johnson's harassment and intimidation, she experienced severe mental, emotional, and psychological distress. Amended Complaint at ¶ 108. She further alleges that she experienced further symptoms when Dunbar Armored, Kocopi, Mew, and Johnson did not allow her to return to her Office Manager position. [*Id.* at ¶ 109].

Defendants argue that her negligent infliction of emotional distress claim must fail because Georgia law does not recognize a claim for negligent infliction of emotional distress. [Doc. 24–2 at 41]. Defendants further argue that to the extent Ms. Anderson seek damages for emotional distress for Defendants' otherwise negligent conduct, her claim also fails because she has not alleged any sort of physical impact. [*Id.* at 42].

Ms. Anderson responds that she experienced physical symptoms "pursuant to the documentation that was submitted by her physicians," which is evidence of Defendants' outrageous conduct towards her. [Doc. 36 at 16].

Defendants reply that she has not alleged any sort of physical impact nor provided any evidence of the same. [Doc. 39 at 13]. Defendants further reply that Ms. Anderson has not produced any authority to support the elimination of the physical impact requirement. [*Id.* at 13–14].

██ Georgia courts have held that in order for a Plaintiff to assert a claim for negligent infliction of emotional distress, he/she must establish a physical impact. *Kirkland v. Earth Fare, Inc.*, 289 Ga.App. 819, 822, 658 S.E.2d 433, 436 (2008); *Smith v. Stewart*, 291 Ga.App. 86, 100, 660 S.E.2d 822, 834 (2008) ("In this case, there is no evidence of a physical injury resulting from the defendants' alleged negli-

gence . . . ."); *Johnson v. Allen,* 272 Ga. App. 861, 869, 613 S.E.2d 657, 663 (2005) ("A claim based on the negligent infliction of emotional distress requires a physical impact.").[31] Here, Ms. Anderson has not produced any evidence that she suffered a physical impact during her employment with Defendant Dunbar, and, as such she cannot prevail on her claim for negligent infliction of emotional distress.

The Court acknowledges that she argues that the Defendants' alleged negligent infliction of emotional distress caused Ms. Anderson to experience physical *symptoms.* [Doc. 36 at 16]. However, she has not produced any evidence to show a physical impact to her by Defendants to satisfy the elements of this cause of action. Thus, Defendants are entitled to summary judgment on this claim.

Accordingly, the Court **RECOMMENDS** that summary judgment be **GRANTED** on Ms. Anderson's negligent infliction of emotional distress claims.

### d. Vicarious and Imputed Liability

Ms. Anderson alleges that Dunbar Armored is responsible for the harassing and intimidating conduct against her by the individual Defendants. Amended Complaint at ¶¶ 111–13. Defendants argue that her vicarious/imputed liability claim must fail, because such a claim is not an independent cause of action under Georgia law. [Doc. 24–2 at 43–44]. Additionally, Defendants argue that because Ms. Anderson cannot show a valid tort claim against the individual Defendants, and that the individual Defendants were acting in furtherance of Dunbar Armored's interests, these claims must fail. [*Id.*].

Ms. Anderson responds that her vicarious/imputed liability claim states a claim for relief because she was subjected to race and pregnancy discrimination and was subjected to harassment and a hostile work environment. [Doc. 18 at 23–24].

Defendants reply that she offered no substantive response to their arguments. [Doc. 26 at 14].

In response to the Court's June 2, 2009, order, Ms. Anderson further responds that she alleged "all facts necessary" for her federal and state claims. [Doc. 36 at 17]. Defendants reply by reiterating that there is no independent cause of action for vicarious liability under Georgia law. [Doc. 39 at 14].

 The Court concludes that Defendants are entitled to summary judgment on Ms. Anderson's claim of vicarious/imputed liability against Dunbar Armored. As correctly pointed out by Defendants, Georgia does not recognize vicarious/imputed liability as a separate cause of action. *See Cotton States Mut. Ins. Co. v. Kinzalow,* 280 Ga.App. 397, 399 n. 3, 634 S.E.2d 172, 174 n. 3 (2006) ("In order to succeed in a claim of respondeat superior [or vicarious liability] against an employer, one must first prove the existence of an underlying tort, and then establish that the employee was acting in furtherance of the employer's business and that he was acting within the scope of the employer's business when the tort was committed."). Specifically, the Georgia courts have held that:

> Where the liability of a party is premised solely upon his vicarious liability for the tortious actions of an agent and judgment is entered for the agent, the party alleged to be vicariously liable is also entitled to judgment.

---

**31.** The Georgia impact rule requires that a plaintiff show that (1) he suffered a physical impact; (2) the physical impact caused him physical injury; and (3) the physical injury caused his mental suffering or emotional distress. *Hang v. Wages & Sons Funeral Home,* 262 Ga.App. 177, 179, 585 S.E.2d 118 (2003).

*ITT Rayonier, Inc. v. McLaney,* 204 Ga. App. 762, 764, 420 S.E.2d 610, 612 (1992). Here, the Court has recommended that all of Ms. Anderson's underlying claims be dismissed against all named Defendants. Therefore, because vicarious liability does not provide an independent cause of action, Defendant Dunbar Armored cannot be held liable to her in the present case under this theory.

Accordingly, the Court **RECOM-MENDS** that summary judgment be **GRANTED** on Ms. Anderson's vicarious and/or imputed liability claims.

### e. Loss of Consortium

Mr. Anderson argues that he is entitled to be compensated for the loss of Ms. Anderson's services and income. Amended Complaint at ¶ 116. Defendants argue that his loss of consortium claim must fail because Ms. Anderson has failed to state a viable claim against all named Defendants. [Doc. 242 at 44–45]. Although it is somewhat unclear, Mr. Anderson appears to argue that he has properly stated a loss of consortium claim because Ms. Anderson's claims are proper. [Doc. 18 at 22]. Defendants reply that he did not meaningfully respond to their arguments. [Doc. 26 at 14].

In response to the Court's June 2, 2009, order, Mr. Anderson further responds that Ms. Anderson suffered mental, emotional and physical distress, which is well documented. [Doc. 36 at 17]. Defendants further reply that Mr. Anderson's loss of consortium claim must fail because it is a derivative claim and Defendants have no liability towards Ms. Anderson. [Doc. 39 at 14]. Defendants also reply that Mr. Anderson has presented no evidence regarding his loss of consortium claim. [*Id.* at 14–15].

In Georgia, "a [husband] has an independent cause of action for the loss of consortium of [his wife] due to a tortious injury inflicted upon him." *Pattee v. Geor-*

*gia Ports Authority,* 477 F.Supp.2d 1272, 1276 (S.D.Ga.2007) (citing *Walden v. Coleman,* 105 Ga.App. 242, 243, 124 S.E.2d 313 (1962)). Loss of consortium is therefore deemed a "derivative" claim, arising out of a tort committed against the plaintiff's spouse. *Canberg v. City of Toccoa,* 255 Ga.App. 890, 892, 567 S.E.2d 21, 23 (2002) ("One spouse's claim for the loss of the other spouse's consortium derives from the right of the other spouse to recover for her injuries"). Thus, where summary judgment is granted on the primary claim, it is also proper on the spouse's loss of consortium claim. *Pattee,* 477 F.Supp.2d at 1276 (citing *Behforouz v. Vakil,* 281 Ga.App. 603, 604, 636 S.E.2d 674, 676 (2006)). Although derivative of a plaintiff's spouse's primary claim, a loss of consortium claim is a separate and distinct claim for relief. *White v. Hubbard,* 203 Ga.App. 255, 255, 416 S.E.2d 568, 569 (1992).

The Court concludes that Defendants are entitled to summary judgment on Mr. Anderson's loss of consortium claim. The Court has recommended that summary judgment be granted on Ms. Anderson's underlying claims. Thus, Defendants are also entitled to summary judgment on Mr. Anderson's derivative loss of consortium claim. Moreover, a loss of consortium claim derived from a Title VII violation does not exist. *Godby v. Electrolux Corp.,* Civ. Nos. 1:93–CV–0353–ODE, 1:93–CV–126–ODE, 1994 WL 470220, *2 (N.D.Ga. May 25, 1994) (refusing to allow loss of consortium claim derivative to a Title VII claim); *see also Quitmeyer v. Southeastern Pa. Transp. Auth.,* 740 F.Supp. 363, 370 (E.D.Pa.1990) ("[T]here is no authority to permit spousal recovery for loss of consortium based on violations of the other spouse's civil rights."); *Tauriac v. Polaroid Corp.,* 716 F.Supp. 672, 673 (D.Mass. 1989) ("The spouse of an alleged federal civil rights victim is not permitted an ancillary cause of action for loss of consor-

tium."); *Jenkins v. Carruth*, 583 F.Supp. 613, 616 (E.D.Tenn.1982) (§ 1983 case) ("The law seems clear that one person may not sue, nor recover damages, for the deprivation of another person's civil rights."). *But see Pattee*, 477 F.Supp.2d. at 1278 (allowing a loss of consortium claim based on § 1983 claim to proceed).

Accordingly, the Court **RECOMMENDS** that summary judgment be **GRANTED** on Mr. Anderson's loss of consortium claims.

### f. Punitive Damages under Georgia Law

Plaintiffs allege that they are entitled to punitive damages under Georgia law because Defendants' actions were committed with "willful misconduct, malice, fraud, wantonness, oppression and also demonstrate a presumption of indifference." Amended Complaint at ¶ 118.

Defendants argue that Plaintiffs are not entitled to punitive damages because such a claim is not an independent cause of action and because Plaintiffs have failed to bring valid tort claims. [Doc. 24-2 at 46–47].

Plaintiffs do not respond to Defendants' arguments. [*See* Doc. 25]. Thus, it appears Plaintiffs have abandoned this claim and Defendants are entitled to summary judgment. Nonetheless, the undersigned address the merits in the event Plaintiffs did not intended to abandon this claim.

O.C.G.A. § 51–12–5.1 provides, in relevant part, as follows:

(b) Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption

of conscious indifference to consequences.

*Id.*

■ The Court concludes that Plaintiffs' punitive damages claim is due to dismissed for two reasons. First punitive damages claims are derivative of the underlying claims, which the Court has recommended be dismissed. *Lilliston v. Regions Bank*, 288 Ga.App. 241, 246, 653 S.E.2d 306, 311 (2007); *J. Andrew Lunsford Properties, LLC v. Davis*, 257 Ga. App. 720, 722, 572 S.E.2d 682, 685 (2002) ("Finally, the claims seeking attorney fees and punitive damages were properly dismissed as derivative of the other dismissed claims.").

■ Second, in order to support a claim of punitive damages "there must be evidence of wilful misconduct, malice, fraud, wantonness, or oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences." *Bowen v. Waters*, 170 Ga. App. 65, 66, 316 S.E.2d 497, 500 (1984). Such is not the case here. Although Plaintiffs do allege that Defendants' conduct satisfies the above standard, they have not produced any evidence which shows that Defendants' alleged conduct satisfies this standard. At most, Plaintiffs have asserted only conclusory allegations of wrongdoing, which is insufficient to withstand summary judgment. *Leigh*, 212 F.3d at 1217.

Accordingly, the Court **RECOMMENDS** that summary judgment be **GRANTED** on Plaintiffs' claim of punitive damages under Georgia law.

### CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' construed motion for summary judgment, [Doc. 24], be **GRANTED,** and that Defendants Dunbar Armored, Kocopi, and Johnson's converted motions for

summary judgment, [Docs. 5, 12, and 14], which rely on the same arguments contained in the joint motion, also be **GRANTED**. The Court further **RECOMMENDS** that Defendants' motion to strike Plaintiff's second amended complaint, [Doc. 37], be **GRANTED** and that Plaintiff's Second Amended Complaint, [Doc. 35], be **STRICKEN;** and, **RECOMMENDS,** *sua sponte,* that Plaintiffs' claims against Defendant Mew be **DISMISSED WITHOUT PREJUDICE** for Plaintiffs' failure to effect service pursuant to FED. R. CIV. P. 4(m). The Court **GRANTS** Defendants' motion to stay discovery and defer issuance of the scheduling order, [Doc. 33], and Plaintiff's construed Rule 56(f) motion, [Doc. 36], is **DENIED.**

The Clerk is **DIRECTED** to terminate reference to the undersigned.

**IT IS SO ORDERED, RECOMMENDED AND DIRECTED,** this the 24th day of *July,* 2009.